ROBINSON *et al. vs.* THE STATE OF GEORGIA.

1. Rescue, and aiding a prisoner to escape, within the purview of the code of Georgia, distinguished.
2. The evidence was sufficient to show the participation of each of the accused in the guilty act.
3. Continuance or postponement of the trial was not required for the absence of one of the prisoner's counsel after his leave of absence had expired.
4. The array was not disqualified by hearing the evidence alone without forming or expressing any opinion thereon. The panel, lacking two jurors of being full, was properly filled by adding the required number.
5. Exception to remark of the court, "Yes, yes," etc., too trivial to require discussion.
6. The sentence of a prisoner connected with the same transaction, and the remarks of the court in passing sentence, will not prevent subsequent trials from being legal.
7. The book of minutes of a municipal corporation may be proved to be such by any witness who knows the fact.
8. Though evidence of a conversation be improperly admitted, a new trial will not follow necessarily.
9. While counsel for the State should not argue to the jury from the omission of the accused to make a statement, the effect of such impropriety may be obviated by an appropriate charge from the court.
10. The charge on reasonable doubt was not objectionable.
11. The charge touching *alibi,* if erroneous, was not hurtful, because the evidence, both for the State and the prisoner, showed there was no *alibi.*
12. A charge to the effect that a jury must arrive at a verdict, is to be construed with reference to the subject-matter which the court had under consideration, namely, the duty of reconciling conflicting evidence.
13. The marshal of a town *de facto* is an officer capable of making lawful arrests; and to aid the escape from him of a prisoner in his custody, is a violation of the statute.
14. The rejection of evidence to show that the marshal was conditionally appointed or elected, was not error, the fact being that he entered upon service and actually served.
15. For the court, on the conclusion of the prisoner's statement, to ask him whether he meant to deny the testimony of the witnesses, was improper, but being meant for the purpose of calling his attention in a friendly way to an omission in his statement, is not cause for a new trial.

16. The court may check the exuberant volubility of a witness, by saying, "You talk too much."

17. The refusal to charge as requested is not error where the charge as given presents the matter fully and fairly to the jury.

April 8, 1889.

· Criminal law. Evidence. Continuance. Jury and jurors. Practice. Sentence. Charge of court. *Alibi.* Officers. Arrest. Before Judge RICHARD H. CLARK. Dekalb superior court. February term, 1888.

Robinson and Jack and Henry Goldsmith, with others, were indicted for aiding one Hubbard, *alias* Hubert, to escape from the custody of the marshal of the town of Decatur. The three named were separately tried and found guilty, and each excepted to the refusal of a new trial.

The evidence introduced for the State tended to show that Hurst, who made the arrest, had been duly elected marshal of the town of Decatur before the arrest was made, and was acting as such marshal at the time he arrested Hubert. The mayor of Decatur testified that Hurst was marshal of that town at the time in question, and exercised the duties of marshal, some of his duties being to preserve order, arrest disorderly persons, etc.; and that the corporation clerk at that time was T. R. Ramspeck; and identified a certain book as a book of minutes of the council of Decatur, stating that he signed these minutes as mayor. From them it appeared that Hurst had been elected marshal by the council. Hubert was arrested by Hurst and another in the corporate limits of Decatur, for drunkenness and disorderly conduct, and after having been taken some little distance away from the place of arrest, the three were pursued by a large crowd of negroes and Hubert violently rescued. There was evidence for the State that Jack Goldsmith participated directly and prominently in this

rescue; and that he was drinking, swearing and utter-
ing threats, and caught hold of the person who was
assisting Hurst, jerking him loose from the prisoner.
Further testimony for the State was not so positive as
to Jack's connection with the crime.

As to whether Robinson aided the escape, the evi-
dence was directly conflicting. Only one witness for
the State testified positively as to Robinson's presence
and participation in the crime, while the evidence on
behalf of the prisoner was very strong to the effect that,
while he was in the neighborhood of the place where
the crime was committed, he was attending a religious
service, acting peaceably and quietly, or was merely a
spectator of the riotous proceeding of others. There
was also evidence that Robinson was of good character.

A witness for the State testified that he walked up to
the crowd before the rescue and asked what was the
matter, and Henry Goldsmith said, "By God, they shan't
arrest him; I will see that they shan't take him!" and
seemed to be fixing to take off his coat; that the wit-
ness caught his coat and " sorter pulled it up " and went
on in the crowd; did not know whether Henry went
into the crowd and went up to the arresting officer; did
not see him again at all until some time after the rescue,
when he came up with Jack Goldsmith and another,
and one of these three asked the marshal if they could
take Hubert and carry him peaceably away. Another
testified that he saw Henry within ten or fifteen yards
of the officer in charge of Hubert, with rocks in his
hand, cursing, and that Henry said, "Don't let them
carry him"; but witness did not see Henry throw any
rocks and didn't see who took the prisoner away; and
that at the time Henry made the remark mentioned,
there were people tolerably thick between Henry and
where Mr. Hurst had the prisoner; and there was a gap

between the crowd around Henry (the witness thought) and the crowd around Mr. Hurst and the prisoner.

The testimony for Jack and Henry Goldsmith tended to show that they took no part in any way in the crime; and that Jack was a considerable distance away from the crowd which committed it at the time, while Henry was in the neighborhood looking on. Also that Henry came up and inquired who it was that hit Jack, and upon being told that nobody had done so, stopped and did not go into the crowd.

The grounds for new trial were these (numbered correspondingly with the heads of the opinion touching them):

(1–2) The verdict was contrary to law and evidence.

(3) Error in refusing to continue, or at least postpone for a week, the case of Jack Goldsmith, on account of the absence of Hooper Alexander, his attorney, under the following state of facts : When the case was called, Mr. Turnbull moved for a continuance, stating (the truth of his statement being admitted) that Mr. Alexander had had sole control of the case ; was present at the preliminary trial ; had prepared the case and expected to try it ; that the prisoner relied on him ; that he (Turnbull) had never seen defendant before nor talked to the witnesses, and defendant could not safely go to trial without Mr. Alexander ; that the latter fully expected to try the case, but had gone a week before to another county, had got into the trial of a criminal case for the defence which unexpectedly went over into the next week, and would certainly be present if the case could be postponed for the week following. (As to this ground, the court certifies that Alexander & Turnbull were partners ; that Alexander was present in court the first week, and the court had announced that this case and others would be taken up on Monday of the second

week; that Mr. Alexander was granted leave of absence until Wednesday of the second week because of an agreement between him and the solicitor-general that this and another case would not be taken up until said Wednesday; that this case was not taken up until the afternoon of the said Wednesday; and that prisoners were in jail, business of the court heavy, and only three weeks allowed within which to dispose of it.)

(4) Error in overruling defendant's challenge to the array of jurors, on the ground that the whole forty-eight had been present in the court-house and had heard the trial of Jack Goldsmith, one of the defendants in the indictment.—This is alleged to be error because the jurors were disqualified by reason of having heard evidence on oath, and the fact that they qualified on their *voir dire* did not render them competent. (In a note to this ground, the judge states that all jurors were ordered to keep out of the court-house and out of hearing in all the cases at the empanelling of the jury in the Lovejoy case, the first tried of the rioters, and the court supposed the order had been complied with, and there was no evidence submitted as to what jurors had disobeyed the order. All the jurors who had tried Jack Goldsmith disqualified, and defendant exhausted no challenge on any of them.)

(a) Error in overruling defendant's challenge to certain jurors for cause, upon the ground that said jurors who were upon the full panel put on the defendant had been tales jurors upon the panel of the previous week, when two other defendants had been tried for the same offence.

(b) Because when the panel of forty-eight jurors was called, two of those called did not respond, whereupon, at once and without accounting for the absence of the jurors, the court allowed the sheriff to supply their

places on the panel from the bystanders.    The defendant in writing challenged the array because the panel was not complete, but the court compelled the defendant to strike from the panel thus made up.    (As to this ground the court states that when two of the jurors failed to respond, as the law requires a panel of forty-eight, he allowed the sheriff to place two other competent jurors in their stead.)

(5) Because the court erred in saying, in response to defendant's counsel's request to have the reporter note his objection to the ruling of the court on his challenge to the array, " Yes, yes ; note it two or three times if you wish."

(6) Because the court, after the jury were empanelled, and before proceeding with the case, when the jury in the Lovejoy case (a trial for murder growing out of the trouble for which defendant was indicted) came in with a verdict of guilty, proceeded to sentence Lovejoy in the presence of the jury in this case, using certain language set out in this ground of the motion.    (As to this ground the court certifies that, in sentencing Lovejoy, he made some remarks on the enormity of the riot and the relations between the races ; that he does not remember what he did state, but what he said is not correctly stated in the motion, and in what he said there was no design to affect the other case ; and that defendant was not being tried for the same offence as that for which Lovejoy was tried.)

(6) Error in overruling defendant's motion to discharge the jury already empanelled and to be allowed to strike a new jury, because the court had used language mentioned in the preceding ground in the presence of the jury on duty.

(7) Error in allowing Kirkpatrick to testify that Hurst was acting marshal of Decatur, and that such

and such a book was the book of minutes of the town council of Decatur.

(8) Error in allowing certain witnesses to testify as to what passed between them and others in reference to the arrest of the negro Hubert, in no way connecting defendant therewith.

(9) Error in allowing the State's counsel to argue upon the failure of defendant to make a statement. (As to this ground the court states that counsel for the defendant privately called his attention to what opposite counsel was doing, and the court stated to him that if he would make the point the court would interpose, but defendant's counsel declined to do this; and that the court also stated to defendant's counsel that he would protect him in his charge, and was careful to instruct the jury on this point, as will be seen from his charge.)

(10) Error in charging as follows on the subject of reasonable doubt: "It is not a doubt that is based upon a fear that the jurors' convictions might not be right, notwithstanding the evidence produces it to a moral certainty, but it must, as I have said, arise out of that testimony and not from that fear."

(11) Error in charging as follows: That the defendant had introduced evidence to show an *alibi*, that is, that at the time the offence was said to have been committed, he was not there to commit it. It is a rule of natural and physical law that one person cannot be in different places at the same time; and if the defendant was not there when it was committed, it would be the duty of the jury to find him not guilty, but if he was there, whether he committed the offence or not, the *alibi* would not be made out.—This is alleged to be error because there was no attempt on the part of defendant to prove an *alibi*, and the charge tended to mis-

lead and confuse the jury; and because the law of *alibi* was not correctly given therein.

(*a*) Error in charging as follows: "As to the nature and strength of the proof necessary to show an *alibi*, it must be of this nature: that if it were not for the evidence of the defendant's witnesses (and you believe from the State's witnesses that he was there), the evidence showing that he was not there must be stronger than the evidence that he was there. In other words, in this case there must be a preponderance of testimony in his favor, as I say, if you believe from the evidence of the State, without his evidence, that he was there, then you are to weigh it and see if he was not there." This is alleged to be erroneous because it puts the burden of proof upon the defendant; and because it was vague, ambiguous and misleading.

(12) Error in charging as follows: Honest witnesses are often, or at least sometimes, in conflict, and one witness may be entitled to as much credit as the other witness, but still the jury must arrive at a verdict, and hence they must consider what is the truth and from the evidence of all deduce the truth, giving to each man the credit that is due him of not having committed perjury.—This is alleged to have been erroneous because it tended to lead the jury to believe that they were obliged to arrive at a verdict; and because the latter portion does not clearly expound the doctrine of the credibility of witnesses.

(13) Error in charging as follows: If Mr. Hurst was elected marshal of the town of Decatur and after having been elected entered upon the duties of his office, and at the time of this arrest was acting as such marshal, that would constitute him an officer, such an officer as the law contemplates, and if as such officer he had the right to arrest persons who are guilty of disorderly conduct

or other breaches of the peace within the limits of the town of Decatur, and if the arrest was made within the limits of the town of Decatur, then Wesley Hubert was in his lawful charge.—This is alleged to be erroneous because it excluded from the consideration of the jury the necessity that the marshal should give bond upon entering upon his office and before he could be a lawful officer.

(14) Error in refusing to allow defendant to prove by witness Ramspeck that Hurst was not a citizen of Decatur, and that he had been elected conditionally with the understanding that he was not to exercise the duties of the office of marshal until he moved within the city and that at the time of this alleged arrest he had not complied with said condition.

(15) Because the court interrogated Henry Goldsmith after he had concluded his statement, asking him whether he meant to deny the testimony of the witnesses. (As to this ground the court states that after the defendant had made his statement, the court concluded that he had not done himself justice, that it was susceptible of the construction that he had not denied the charges, and that the tenor of his statement was an inadvertence; and the court wanted him to have the full benefit to be had from a statement.)

(16) Because the court, after counsel had concluded the examination of defendant's witness, Millie Stills, asked her certain questions and during the course thereof remarked to the witness, "You talk too much, Millie." (As to this ground the court states that the witness rattled on in her talk so that what was evidence could with difficulty be separated from what was not, and the court said what he did simply to check her superfluous talk.)

(17) Error in refusing to charge as follows: If the

defendant [Henry Goldsmith] started into the crowd under the impression that his brother Jack was in a fight, and immediately upon being told that he was not, desisted without having committed any act tending to liberate the prisoner, then the jury will be authorized to find the defendant not guilty.

ALEXANDER & TURNBULL, and H. C. JONES, for plaintiffs in error.

JOHN S. CANDLER, solicitor-general, for the State.

BLECKLEY, Chief Justice.

1. These indictments being for the offence of aiding Wesley Hubert, a prisoner, to escape from custody, the first question is, whether the offence proved was the one charged, or whether it was the offence of rescue. The two relevant sections of the code are as follows : "Rescue is the forcibly and knowingly freeing another from arrest or imprisonment." §4478. "If any person or persons shall aid or assist any prisoner to escape or attempt to escape from the custody of any sheriff, coroner, constable, officer, or other person, who shall have the lawful charge of such prisoner, such person so offending shall, on conviction, be punished," etc. §4483.

We think that rescue takes place where there is no effort on the part of the prisoner to escape, but his deliverance is effected by the intervention of others without his co-operation; whereas, the offence of aiding a prisoner to escape consists in inciting, supporting or reinforcing his exertions in his own behalf tending to the accomplishment of that object. The evidence shows, in all three of these cases, that Wesley Hubert was not merely passive, but was himself making demonstrations and putting forth some effort to effect his escape.

2. In each of the cases there was evidence from which the jury could infer that the accused encouraged, or otherwise contributed, to the efforts of the prisoner to render his escape effectual; and in point of fact his efforts were effectual. The escape was accomplished.

3. We discover no error in refusing to continue the case of Jack Goldsmith because of the absence of one of his counsel. The leave of absence which had been granted had expired. The same observation applies to the refusal of the court to postpone the case until the following week.

4. The challenge both to the array and to the polls was properly overruled. Although it appeared that the jurors were present and heard the evidence delivered on oath, it did not appear that they or any of them had formed and expressed any opinion as to the guilt or innocence of the party making the challenge. The objection that the panel required two more jurors to render it full, was met by summoning that number to complete the panel, and thus completing it.

5. The exception that the court remarked, "Yes, yes," etc., when the reporter was requested to note an objection to a certain ruling, is too trivial to require discussion.

6. Lovejoy, who had been previously tried, was sentenced in the due administration of judicial business; and we cannot hold that the regular proceedings of a court are to be varied or delayed by the fact that they may affect the minds of jurors with reference to other business which must subsequently come up for trial. *Johnson vs. The State,* 59 *Ga.* 189; *Townsend vs. The State,* 76 *Ga.* 105; *Collins vs. The State,* 73 *Ga.* 76.

7. It was competent to prove that Hurst was the acting marshal of Decatur, and to show by any one who knew the fact that the book of the minutes of the town

council was such book.    There was no objection that a certified copy from the book would be the primary evidence, according to sections 3816 and 3817 of the code.

8. It may have been somewhat irregular to allow witnesses to testify as to what passed between them and others in reference to the arrest of the negro Hubert, but this we think did not vitiate the trial.

9. The same may be said as to allowing the State's counsel to argue from the failure of the defendant to make a statement.    The court was particular to obviate, by an appropriate charge, any hurtful result.

10. The charge of the court upon reasonable doubt seems free from objection.    We do not see that it varied substantially from that usually given, and which has been held correct in hundreds of cases.

11. Touching *alibi*, the court may have given an improper charge; we need not rule on that question, for really any charge whatever upon the subject of *alibi* was in favor of the prisoner; according to the evidence, there was no *alibi* involved in the case.    No absence from the scene of the crime appeared, whether the testimony for the accused or for the State be regarded. All of these parties were in the crowd, and were legally present when the offence was committed.

12. The charge of the court to the effect that the jury must arrive at a verdict, is to be understood with reference to the subject-matter under consideration, which was the duty of reconciling conflicting evidence.    The court simply meant that the jury must arrive at some conclusion which would reconcile all the evidence, if they could do so.

13. The marshal of a town *de facto* is to all intents and purposes an officer, as to the legal power of making arrests; and this is so whether he had given bond and

security or not, and whether he resided in the corporate limits or not.

14. The rejection of evidence that the marshal was elected or appointed conditionally, with the understanding that he was not to exercise the duties of the office until he removed within the town, and that at the time of Hubert's arrest he had not complied with said condition, was not error. No such condition appeared upon the minutes of the council; it rested altogether in parol. Besides, if such condition was imposed, it did not in any way militate against the subsequent fact that the marshal acted as marshal, and was in all respects an officer *de facto.* Proof that he so acted established his official character. Code, §3764.

15. It certainly was irregular to interrogate Henry Goldsmith after he had concluded his statement, by asking him whether he meant to deny the testimony of the witnesses; but the court explains that this was done for the purpose of calling attention to an omission in the statement, and with a purpose altogether friendly. The motive was a kind one. Nevertheless, the act was not well-advised, and we cannot approve it. But we do not feel warranted in directing a new trial on account of it.

16. That the court said to the witness Millie Stills, "You talk too much, Millie," does not seem to require a new trial. The remark was made simply to check her volubility while she was rattling away so that her evidence could with difficulty be separated from mere "talk."

17. The refusal to charge in the case of Henry Goldsmith, that if he started into the crowd under the impression that his brother Jack was in a fight, and immediately upon being told that he was not, desisted without having committed any act tending to liberate

the prisoner, then the jury would be authorized to find him not guilty,—was not error, considered in the light of the whole charge as contained in the record. The jury were instructed that there could be no conviction unless they believed from the evidence that the accused aided or assisted in the escape of Hubert from the officer.

Our conclusion is, that the court did not err in refusing to grant a new trial, in all or any one of the three cases.

Judgment affirmed.