# CASES ARGUED AND DECIDED

IN THE

# Supreme Court of Georgia.

## MARCH TERM, 1894.

### MILLER v. THE STATE.

1. That a fellow-prisoner in jail with the accused, who was charged with murder, asked him about the killing and " told him he better tell the truth, the white folks were going to break somebody's neck," did not, as matter of absolute law, render inadmissible confessions then and there made in the presence and hearing of fellow-prisoners only, the trial court ruling them *prima facie* competent and in its charge leaving the jury to determine whether they were in fact made, and instructing them properly upon their effect, on condition that they appeared to have been free and voluntary.

2. After charging the jury substantially in the terms of the statute as to the prisoner's statement, there was no error, when charging the law of reasonable doubt or upon other principles of law applicable, to instruct the jury that they should try the case by the evidence, or in failing to charge that they should consider the prisoner's statement along with the evidence. *Vaughn* v. *The State*, 88 *Ga.* 731. In the case of *Washington* v. *The State*, 87 *Ga.* 12, where a recommendation as to the practice in such cases was made, the facts were entirely different from those of the case at bar.

3. There was no error requiring a new trial in any of the charges complained of, as to admissions, confessions, corroboration of the same, reasonable doubt, the prisoner's statement, and recent possession by the accused of goods which were in the possession of the deceased at the time of the homicide; the evidence warranted the verdict, and this court will not overrule the discretion of the trial judge in refusing to grant a new trial.

April 2, 1894. Argued at the last term.

Indictment for murder. Before Judge BARTLETT. Bibb superior court. November term, 1893.

v 94-1

The evidence showed, that Braswell, the murdered man, went from his home to town on a Monday morning, and on his way back early in the night bought a sack of flour and put it into his wagon. During the same day a pair of spectacles had been given to him. The last time he was seen alive was about nine o'clock on Monday night, and about two hours afterwards his wife and son, who were at his home, heard the noise of the wagon being pulled in the lot. The son went out and found his father lying dead in the wagon, with gunshot wounds in his head, and with his throat cut. Early the next morning defendant Miller carried to Becky Watson's house a sack of flour of the same size and with the same brand as that which had been bought by Braswell, and laid it across the corner of a trunk sitting near the door, where it staid all that day. In the evening he came to the house and shut the flour up in a trunk. The same evening a *posse* came to the house and arrested him. They found the flour lying in the trunk with the brand down, and with splotches of blood on the side, apparently made where it was caught hold of. Defendant was sitting tied in a chair, and when he saw them pull the sack of flour out and heard some one say, "Here is the flour, bring a light," he made a spring towards the door. He was searched, and in his pockets were found a pair of spectacles which a witness testified, to the best of his knowledge and belief, were the ones he gave Braswell. In defendant's pockets were found also a razor and some large shot of the same size as those which another witness testified he had sold defendant a few days previously. At the time these articles were discovered, defendant stated that the flour was Becky Watson's, that she had bought it and he did not know anything about it, and that the spectacles were her mother's. Becky was not in the room at the time. She was called in, and defendant tried to make her say

they were her mother's spectacles, but she denied this, and went and got her mother's and showed them. She further said that he brought the flour there that morning. On the way to jail defendant told some of the arresting party that he bought the sack of flour from one of the Troutman boys, who also tried to sell him the glasses, and failing to do so, gave them to him. He said the Troutman boys were at the branch when they sold him the flour; that they had a gun and were going "possum hunting." He was asked what he was doing at the branch; and replied, that he had started to Charles Preston's house; that he came to the rise of the hill and saw there was no light, returned to the branch, and the Troutman boys were standing there; that he talked with them a few minutes, turned and walked up the road 50 or 75 yards and met the wagon coming down the hill; that he stopped there, and directly a gun fired, and he waited and went back; that he met the Troutmans coming from the opposite side of the branch, and one of them had a sack of flour; that he asked them what they had shot, and one of them said, a white man came along and he asked him certain questions, and he cursed him for nothing and he shot him; that he, defendant, asked them if they were going hunting with a sack of flour, and they told him no, and wanted to know if he would buy it, offering it to him for 25 cents, and further offering to sell him some spectacles for a nickel; and that he paid 25 cents for the flour but did not want to buy the spectacles, and they gave them to him. He did not say anything about seeing the Troutman boys on his way to Preston's house, but said he saw them on his way back. Braswell's son testified that he staid by the wagon containing the dead body until the coroner reached there; that there was no flour in the wagon; and that the body was not disturbed from the time the wagon got there until the coroner came. One of the

coroner's jury testified that Braswell's right vest pocket was turned wrong side out, and there was a nickel on the back part of his coat that had lodged; and that was all they found.

The following is the substance of the prisoner's statement: He knew nothing of the murder, and is innocent. He promised old man Charles Preston to come to his house that Monday night, and when within about 150 or 175 yards of the house, saw two men on the right hand side of the road with a gun. They spoke to him by his name, and asked him where he was going. He told them, and asked where they were going, and they replied, hunting. He bade them good night, and when he was within 25 yards of Preston's house he saw no light, did not want to disturb him, and said to himself he would come back next Tuesday night. Returning, he again saw the Troutman boys who had moved nearer to the center of the road. One of them said they were waiting for somebody and wished they would come on, that they wanted to go hunting. Defendant had no idea they were going to murder anybody, and walked up about 100 yards where he met a wagon and mules coming down the hill, with a man sitting in the wagon, his face towards the back. Defendant went 50 yards further, and heard a gun fire. He looked around and kept walking, and saw a light from a match. Thinking they had treed a " coon or possum," he returned to see what they had killed, and when near the branch saw them coming swiftly down the hill on the other side. He asked them what they had shot; they did not answer, but asked him if he did not want to buy a sack of flour. He said, " I don't know; where is it?" They said, " It is side of the fence." He said, " I didn't see it." One of them asked the other, " Was not the flour there when he came up?" and the other replied " Yes," and said, " If you don't want to buy it, you need not

buy it; you can have it for a quarter." Defendant bought it, and they gave him a pair of spectacles. He went to his girl's house and put the things on the table. Called her three times, and she did not answer. He left them there and went to town. The first he heard of Braswell's murder was early Tuesday morning. About midday he went to this woman's house and asked where were those things he brought there last night, and found that she had put them into the trunk. He denied the testimony of Louis Mosley as to a confession (referred to in the opinion), and stated that Mosley had come upon the stand and sworn to a lie on him; that he had not had anything to say to Mosley or Charley Bugg; and that he had some words with Bugg a few days after he got in jail, and had had nothing to do with him since, and that is the reason he said that; they had a grudge against him because he would not let them run over him at the jail, etc.

The first ground of the motion for a new trial appears in the opinion. The other grounds assign errors in the following charges of the court:

" The court leaves it to the jury to determine all matters of fact in this case, whether there has been any admission made by the defendant, whether there has been any confession made by the defendant as to the participation in the offence; those are all matters for the jury to determine from the evidence in the case, and in the event you believe there were any admission of his being present, why, then, you must not take the mere admission of his being present, as an admission of participation in the offence, unless you believe from the evidence that he was not only present, but participated in the offence; and in the event you believe, from the evidence in the case, there has been shown to have been made by the defendant any confession of participation in the crime charged against him, then you would be author-

ized to convict him upon these confessions only when the confessions have been corroborated by other evidence in the case, either by proof of the *corpus delicti*, or by proof of any other facts and circumstances in the case that satisfies your mind that the confession is corroborated to that extent that satisfies your mind beyond a reasonable doubt that the defendant is guilty." Error, because the jury may have believed therefrom that they were authorized to conclude that the mere admission of being present without participation in the offence, being corroborated by the proof of the *corpus delicti*, was sufficient to authorize a conviction, and was in itself a sufficient corroboration of any confession that might have been made.

"There may be some men, and doubtless are, who believe very few things, are of a doubtful nature as to the character and truthfulness of testimony; such men are not reasonable men, and their stubborn disbelief in the existence of facts in spite of testimony is not reasonable, and such a doubt as that the law does not recognize as a reasonable doubt." Error, because unnecessary, as the court had already charged fully upon the subject of reasonable doubt, and it is not the province of the court, but of the jury, to determine who are and who are not reasonable men. And because the jury might have gathered from this charge an idea that the court meant to intimate an opinion upon the truthfulness and sufficiency of the testimony, or the weight of it.

"To sum up, the rules with reference to reasonable doubt may be stated to be thus: If, after a full, impartial consideration of the case, of all the evidence in the case, and all of the whole case, there is a reasonable doubt in your mind as to the guilt of the defendant, you will render a verdict of not guilty. Such doubt, as I have endeavored to explain to you, must not be mere speculations or idle fancies, or conjectures, but well

founded doubts growing out of the evidence alone, such as prevents your mind from reaching a safe and satisfactory conclusion." Error, in excluding proper consideration of defendant's statement, especially as the court afterwards charged, "that the statement of the defendant goes to the jury, not strictly speaking as evidence, not under oath, but to have just such force only as the jury think proper to give it," etc.

" You try the case, gentlemen of the jury, by the law, unfeelingly as jurors; try it by the evidence, find the truth of the evidence, and whatever is the truth of the evidence, apply the law to the truth of the evidence, the law which I have given you in the case, or tried to give you, to the truth of the evidence; and if the verdict be that the defendant is guilty from the evidence, let the verdict be written, 'We, the jury, find the defendant guilty,' with such recommendation to imprisonment to life, if you see fit to recommend." Error, for the same reason as last above stated.

" If you have that sort of doubt from the evidence in the case, the law gives it to the defendant and acquits him; but in determining that, the court instructs you that it is not necessary for the State to show that it is impossible for the offence to have been committed by some one else." Error, because the court ought to have gone further and charged that it was at least necessary for the State to show that it was improbable and unreasonable to believe under the evidence that somebody else could have committed it; especially as defendant contended that the murder, if committed, was committed by the Troutman boys.

" If you believe, from the evidence in the case, that the defendant made any admission that he was present at the scene of the homicide, or that he made an admission in the trial of this case that he was present, then that admission is not to be taken as a confession of guilt,

unless the admission went into a confession of participation in the crime. In other words, the mere admission of being present would not be a confession of guilt; but if the defendant has admitted that he was present at the time that Braswell was killed, then such admission would be direct evidence of his own presence; but the fact that he had been present would not be sufficient evidence to authorize you to convict him, for before you can convict him you must be satisfied, beyond a reasonable doubt, that he was not only present at the time that Braswell was killed, but that he was one of the perpetrators of the offence, one of the principal actors in the commission of the offence, or that he was aiding or abetting it to be done." Error, because neither the evidence nor the prisoner's statement discloses any admission that he was present at the scene of the homicide or at the time it was committed, or even near enough to have committed it or to have taken part in it, but expressly negatives his presence at the time of its commission; wherefore the charge was founded on an assumption unwarranted by the facts in the case.

"A confession is where a man admits that he did the crime charged upon him, or that he did commit the crime. The law says that they should be received with great caution, and that a conviction should not be founded upon a confession alone. While that is true, and while it is true a confession of guilt should be received with great caution and scanned with great care, and while a conviction cannot be had upon a confession alone, uncorroborated, yet when the proper caution has been observed in the reception of such testimony, and a careful consideration of it, if it appears that the confessions were deliberately made, that they were made freely and voluntarily, and without being induced by the slightest hope of benefit, or the remotest fear of punishment, then they are permitted by law to be offered in evidence,

and be considered by the jury as all other evidence. Their value depends upon their being freely and voluntarily made, and on the presumption that a rational being will not make an admission prejudicial to his own interest and safety, unless he be prompted by the truth." Error, in withdrawing from the jury the right of deciding whether or not the confession was made, and if so, whether it was made freely and voluntarily without the slightest hope of benefit or remotest fear of punishment; and because the jury might have reasonably construed the clause relating to proper caution in the reception of such testimony, as an expression of opinion by the court that a confession had been made, and that as the proper care had been observed by the court in the reception of it, it was unnecessary for the jury to inquire as to whether a confession had been made, and if made, whether freely and voluntarily; and because the charge instructs the jury that the court had observed proper caution in the reception of the testimony, and therefore the jury should consider such confessions as being entitled to great weight because "a rational being will not make an admission prejudicial to his own interest and safety unless prompted by truth."

" Therefore you will consider all the evidence in the case, and you consider, if it be established in the case that any property was in the possession of the deceased, on his person or in his wagon, and that they were taken therefrom; and if you believe from the evidence that they were found in the possession of the defendant, or seen in his possession, and if he has not satisfactorily accounted for their possession, with the clear identification of the property, with clear proof that they were in the possession of the dead man at the time of the homicide,—you are authorized to consider those facts together with all others in the case, giving those facts and all other facts in the case such weight as you deem them

entitled to, in reaching a conclusion in the case. You may consider, if it be established by the evidence in the case, what statement the defendant made as to how he came into the possession of them, if he was found in possession of them; did he make a correct statement, or an incorrect statement; did he make contradictory statements about them? if so, you are authorized to consider that fact for whatever it may be worth, along with the evidence in the case. See if this statement is a reasonable one; if so, accept it as a reasonable one; if it is contradictory and unreasonable, then give it such weight as you think it entitled to, remembering that the bare possession of goods alone would not be sufficient to say that he was the person who committed the murder in law, but it is a circumstance that you are authorized to consider with the other evidence in the case." Error, in failing to charge in this connection the theory contended for by defendant, to wit, that the goods found in his possession, according to the statement of those from whom he got them, were never in possession of deceased. It is further contended that in no portion of the court's charge were the jury instructed upon this theory.

R. L. ANDERSON and W. J. GRACE, for plaintiff in error.

J. M. TERRELL, attorney-general, and W. H. FELTON, Jr., solicitor-general, contra.

SIMMONS, Justice.

Henry Miller was indicted jointly with one Boston, one Bird and two Troutmans, for the murder of John Braswell. Miller was tried separately and was found guilty; he made a motion for a new trial, which was overruled, and he excepted.

1. One Mosley testified that while he and one Bugg were confined as prisoners in the same cell with Miller, after the preliminary trial of Miller, Bugg asked Miller

"what about the killing?" and said "he better tell the truth; the white folks were going to break somebody's neck"; whereupon Miller said that he shot Braswell, and Bird cut his throat; that Boston was present but had nothing to do with it; that he (Miller) threw the gun away in the woods and went on home; that he got home just about day and put into his trunk the flour which was taken from it at the time he was arrested.

The first ground of the motion for a new trial assigns error upon the refusal of the court below to rule out this testimony, it being contended that Bugg's remark to the accused that he had better tell the truth, etc., rendered what was said by the latter inadmissible, under that section of the code which declares that " to make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." (§3793.) Undoubtedly the statement to a person charged with crime that he had better tell the truth, may under some circumstances amount to such an inducement as should exclude a confession made upon the strength of it; but under the circumstances shown by the evidence in this case, we do not think that in this instance it should as a matter of law be held to constitute such an inducement. Counsel for the plaintiff in error relied upon the case of *Green* v. *The State*, 88 *Ga.* 516, in which it was held that the court below erred in not excluding a confession which the accused was led to make by the statement that it might be best for him to tell. In that case, however, this was said to the accused in the presence and apparently with the sanction of the sheriff, in whose custody he was at the time, by a person who had arrested him, and whose object evidently was not so much to ascertain the truth as to obtain a confession of guilt; and the accused, in view of the authority exercised by these persons, may have supposed that they

were able to render him some aid in relation to the charge against him, and that it would be to his advantage to follow their advice and make such a statement as they desired him to make. A very different case is presented where remarks of this kind are made to the accused by another prisoner and in the presence of fellow-prisoners only; for while it is true that in this State it is not necessary, in order to exclude a confession induced through hope or fear, that the inducement should have proceeded from a person in authority, it is plain that a remark of this kind, when made by a person in authority, may have an influence in inducing a confession through these motives, which it would not have if it came from a source which the accused could have no reason to regard as authoritative. It is not at all likely that the accused in this case, in replying as he did to the inquiry of his fellow-prisoner, did so because he supposed he would gain anything, so far as the charge against him or any punishment on account of it was concerned, by then and there making a confession, or that it would be worse for him if he did not do so. The statement that the "white folks" were going to break "somebody's" neck, if he understood it as referring to himself, could not have been understood as meaning that they were about to do so then, for there was nothing to indicate that he was in any immediate danger; nor is it likely that he understood what was said as meaning that if he did confess, the danger to himself might be averted. This language could of course be taken into consideration by the jury, in determining what weight should be attached to the admissions in question, and it would be for them to say whether the admissions were thereby rendered involuntary or not; but the circumstances were not such, in our opinion, as would require the court as a matter of law to exclude them. We think the proper course was pursued by the

court below in holding the admissions *prima facie* competent, and in his charge leaving the jury to determine whether they were in fact made, and instructing the jury as he did upon their effect on condition that they appeared free and voluntary.

2. Complaint is made that the court erred in charging upon the subject of reasonable doubt, to the effect that the doubt must be one growing out of the evidence; and in charging that the jury must try the case by the evidence, without charging further, in immediate connection therewith, that the prisoner's statement should be considered along with the evidence; the effect of this being to exclude a proper consideration of the statement, especially as the jury were instructed in another part of the charge that the statement was not, strictly speaking, evidence.    This point is ruled by the decision in *Vaughn* v. *The State*, 88 *Ga.* 731, 733 (4), in which this court passed upon a similar assignment of error, and held that the court below did not err in the instructions complained of.    In the opinion of the court in that case it is said: " The jury trying a criminal case are sworn to give a true verdict according to evidence.    It is important for them not to confound the prisoner's statement with the evidence or the evidence with the statement.    The statute allows them to give the statement such force as they think proper, and even to believe it in preference to the sworn testimony.    In charging them the court should keep the evidence distinct from the statement, and shape the general tenor of the charge by the evidence alone and the law applicable to it.    For if the court should mingle evidence and statement together, the jury might find it difficult to separate them and might fail to understand the import of the instructions delivered from the bench.    At some stage of the charge the statutory provisions touching the statement ought to be made known to the jury,

and this, as has frequently been suggested by this court, is usually enough to say touching the statement." In the present case this was done, the instructions given on this subject being substantially in the terms of the statute. In the case of *Washington* v. *The State*, 87 *Ga.* 14, in which complaint was made of the failure of the court below to call attention to the prisoner's statement in the same connection with certain portions of the charge, this court went no further than to make a recommendation as to the practice in such cases. We did not hold, but on the contrary disclaimed any intention to hold, that the failure to do so was error.

3. There was no error requiring a new trial in any of the charges complained of; the evidence warranted the verdict, and this court will not overrule the discretion of the court below in refusing to grant a new trial.

*Judgment affirmed.*