## WHITWORTH v. THE STATE.

1. Where on the trial of one for murder it appeared that counsel had been employed and paid by funds raised by popular subscription and that such counsel did in fact aid in the prosecution of the case, the trial judge did not err in refusing a request of counsel for the defendant, that all jurors related to subscribers to said fund be stricken before the array was put upon the defendant, and the jurors called and put upon the defendant; the court having the names of such subscribers called in the presence of the jurors, instructing them that, if any of them were related to such subscribers, they should let that fact be known when their names were called, and in this way having all jurors disqualified for any cause stricken from the panel. The method of excluding from the panel jurors disqualified for cause is to have each juror called and put upon the defendant, so that each juror can be plainly seen by him, and an opportunity be thus given him to make objection that any juror is disqualified by law from serving on the jury, for any reason, including relationship to a voluntary prosecutor, such as a subscriber to a fund to employ counsel to prosecute the defendant; the method of purging incompetent and disqualified jurors from the panel in civil and misdemeanor cases not being applicable to felony trials.

2. The court did not err in admitting evidence of a confession made by the defendant under these circumstances: The defendant was in jail. The sheriff said to him, "You killed your wife, I am certain," and told him that nobody could touch him while he was in the custody of this officer, and that if the defendant did not want to make a statement, not to do it. The defendant did not then make a statement; but as the sheriff started out, the defendant called him back and said that, if the sheriff would take him out of the cage to himself, he would like to talk to him. They went around into a cell by themselves, and the defendant said to the sheriff that he wanted to tell the truth about it, and said, 'Yes, I killed my wife last night and cut her throat." The sheriff asked him, "What for?" and the defendant said, "She wouldn't let me have the money she had, and wouldn't let me have intercourse with her." Under these circumstances, evidence of this confession was not inadmissible on the ground that it was not voluntary but was induced by hope of benefit or fear of injury.

3. The court did not err, for the reasons assigned by the defendant, in charging the jury as follows: "But I charge you in the beginning, that the law presumes everybody to be sane; that is a presumption, however, that is rebuttable, and it is not everybody that is sane, and the burden is on the defendant to establish that fact; whether or not that has been done either by evidence from the State, or established by evidence from the defendant, it can be done by evidence of either, is a question entirely for you to determine; you are the sole judges."

4 (4, 5, 6). In the absence of timely requests, the court did not err in failing to give in charge to the jury instructions as to matters collateral to the defenses set up by the defendant.

(7). The court did not err in refusing to grant a new trial upon the grounds of the motion setting up newly discovered evidence; it not being made to appear that the same could not have been discovered by the exercise of ordinary care, and it not being probable that the result would have been different if the alleged newly discovered evidence had been before the jury.

6. The verdict is supported by the evidence; and the trial judge did not abuse his discretion in refusing to grant the defendant a new trial.

No. 3519. APRIL 10, 1923.

Indictment for murder. Before Judge Jones. Hall superior court. November 22, 1922.

*Johnson & Adderholdt,* for plaintiff in error.

*George M. Napier, attorney-general, Joseph G. Collins, solicitor-general, Robert McMillan, solicitor-general, Seward M. Smith, assistant attorney-general,* and *Howard Thompson,* contra.

HINES, J. The defendant was indicted for the murder of his wife, and was convicted and sentenced to be hanged. His defenses consisted of the general defense of not guilty and the defense of insanity. He made a motion for new trial upon the general grounds, and upon certain special grounds embraced in an amendment to his motion. He assigns error upon the judgment of the court overruling his motion for new trial.

1. An attorney was employed to assist in the prosecution of the defendant, and was paid by a subscription made for that purpose by various persons. Counsel for the defendant requested the court to purge the jury of all those on the list of jurors who were subscribers to said fund or related to such subscribers. The court then had the list of subscribers to said fund read, and stated to the jurors that if any of them were related to the defendant, to the deceased, or to any of the subscribers to said fund, they would let that fact be known when their names were called, one by one. Of the panel of 48 jurors put upon the defendant, 26 were stricken for cause when so called. The defendant insists that the court should have purged the panel of 48 of all disqualified jurors, and should have had their places filled by impartial and competent jurors before the array was put upon him, so that he could have had a panel of 48 qualified and competent jurors from which to strike. The failure of the court to pursue this method left 26 disqualified jurors upon the panel, whose disqualification was not known to him, and could not be known until the name of each juror was called, for which reason he and his counsel left on the

jury those whom they would have stricken, had it been known to them at the time that other men further down on the list were disqualified and would go off for cause. So the first question for determination is whether or not this action of the court was error. To answer this question, we must determine what is the proper and legal practice in this matter.

When any person stands indicted for a felony, the jury should be impaneled as prescribed in sections 862 and 863 of the Penal Code. Penal Code, § 996. By section 862, "the court shall have impaneled forty-eight jurors, twenty-four of whom shall be taken from the two panels of petit jurors, from which to select the jury. If the jury can not be made up of said panel of forty-eight, the court shall continue to furnish panels, consisting of such number of jurors as the court, in its discretion, may think proper, until a jury is obtained." Section 863 declares that "When the regular panels of petit jurors, or either of them, can not be furnished to make up panels of forty-eight for the trial of felonies, or panels of twenty-four from which to take juries in misdemeanors, because of the absence of any of such panels, where they, or any part of them, are engaged in the consideration of a case, the presiding judge may cause said panels to be filled by summoning such numbers of persons, who are competent jurors, as may be necessary to make full the said panels; and such panels of twenty-four shall be used as the regular panels of twenty-four are." When panels of jurors are made out in accordance with the provisions of the above sections, the clerk is required to make out three lists of each panel and furnish one to the prosecuting counsel and one to counsel for the defendant. The clerk shall then call over the panel, and it shall be immediately put upon the accused. Penal Code, § 997. The accused can then in writing challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. If the challenge is sustained, a new panel shall be ordered; but if not sustained, the selection of jurors shall proceed. Penal Code, § 998. Objections to individual jurors of the panel furnish no ground of challenge to the array, but only ground of challenge to the polls. *Robinson* v. *State, 82 Ga.* 535 (9 S. E. 528); *Schnell* v. *State, 92 Ga.* 459 (17 S. E. 966); *Brown* v. *State, 97 Ga.* 215 (22 S. E. 403); *Bryan* v. *State, 124 Ga.* 79 (52 S. E. 298); *Cole-*

*man* v. *State,* 141 *Ga.* 731 (1*b*) (82 S. E. 228). In the absence
of a challenge to the array, each juror is then called by the clerk,
and in calling each juror he shall be presented to the accused in
such a manner that he can distinctly see him, and then the State
or the accused may make either of the following objections: (1)
that he is not a citizen, resident in the county; (2) that he is
an idiot or lunatic, or intoxicated; (3) that he is so near of
kindred to the prosecutor, or the accused, or the deceased, as to
disqualify him by law from serving on the jury. Penal Code, §
999. One who contributes to a fund to be used in the employment
of an attorney to aid the solicitor-general in the prosecution of
a person for an alleged offense for which he stands charged, where
the attorney does render such aid upon the trial of the case, is to
be considered as a volunteer prosecutor, and one who is related
within the prohibited degree to such person is not competent to
sit as a juror on such trial. *Lyens* v. *State,* 133 *Ga.* 587 (66 S. E.
792). An objection to a juror on this ground is not ground for
challenge to the array, but is one of challenge to the polls. When
any of the above objections are made to a juror, the court shall
immediately hear such evidence as may be submitted (the juror
being a competent witness) in relation to the truth thereof; and if
satisfied of the truth of them, the juror shall be set aside for cause.
If either one of these objections exists, but the fact is unknown to
either party or his counsel at the time the juror is under in-
vestigation, but is subsequently discovered, such objection may
then be made and proof heard at any time before the prosecuting
counsel submits to the jury any of his evidence. Penal Code, §
999. The above provisions of law provide a full and complete
method for the ascertainment and rejection of jurors who are sub-
ject to challenge for cause. This method the court pursued in
this case; and we do not think he erred in so doing.

We will now briefly consider the authorities relied on by counsel
for the defendant. Section 858 of the Penal Code, which declares
that, " In civil cases and cases of misdemeanors in the superior
court, each party may demand a full panel of twenty-four com-
petent and impartial jurors from which to strike a jury," does
not apply to felony cases. In civil and misdemeanor cases the
jurors are selected by the parties striking from the lists of jurors
on the panels. Each juror is not called and put upon the defend-

ant in a misdemeanor case or upon parties in a civil case. For this reason provision for demanding a panel of competent and impartial jurors is necessary. The rulings in *Mayor &c. of Columbus* v. *Goetchius,* 7 *Ga.* 139, *Justices &c. of Pike County* v. *Griffin &c. P. R. Co.,* 15 *Ga.* 39, *Howell* v. *Howell,* 59 *Ga.* 145, and *Melson* v. *Dickson,* 63 *Ga.* 682 (36 Am. R. 128), refer to the method of selecting jurors in misdemeanor and civil cases, and have no reference to felony trials. The rule requiring a panel of 24 impartial jurors in civil and misdemeanor cases, where no method of ascertaining and eliminating from the lists partial jurors exists, except by the court having them purged, does not apply in felony trials, where a special method for the exclusion of such jurors is provided. So we do not think that the trial judge erred in this matter.

2. In the second ground of his amendment to his motion for new trial, the defendant complains of the admission by the court, over his objection, of a confession made by him to the sheriff. The testimony of the sheriff as to the circumstances under which this confession was made, and as to the confession itself, is as follows: "The next morning me and Mr. Patton and W. K. Crow went to the jail; and Mr. Hopkins, the deputy sheriff, was there, and I asked him [the defendant] some questions. I told him, 'You killed your wife, I am certain.' And I went on and stated to him that there couldn't anybody touch him while he was a prisoner of mine, and if he didn't want to make a statement, not to do it; and he didn't make any statement. As we started out he called me back. W. K. Crow is deputy sheriff and one of these highway-commission fellows. . . He called me back voluntarily — we were all leaving — and no statement had been made at that time; and he told me that, if I would take him out of the cage to himself, that he would like to talk to me. . . Me and him went around in the other cell, and Whitworth told me he wanted to tell the truth about it; and I said I would write it down — and somehow I have lost the paper and can't find it, but can tell you what was in it. He says, 'Yes I killed my wife last night, and cut her throat.' And I says, 'What for?' And he says, 'She wouldn't let me have the money she had, and wouldn't let me have intercourse with her.'" Counsel for the defendant objected to the admission of this evidence, on the ground that said alleged confession

was not free from fear of punishment or hope of reward, and that the same was not voluntary, was under duress, made from fear and compulsion and hope of reward. " To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." Penal Code, § 1032. Was this confession voluntary and made without being induced by the slightest hope of benefit or remotest fear of injury? The sheriff said to the accused: " You killed your wife, I am certain." He further told the accused that no one could touch him while he was a prisoner of this officer, and if he did not want to make a statement, not to do it. Can it be said as a matter of law that the confession was induced by the remotest hope of benefit. This officer did not tell the defendant that he would be benefited in any way by making this confession. Was the confession induced by the remotest fear of injury? The declaration of the officer that he was certain that the defendant killed his wife might have produced in the mind of the accused a fear that his crime was known, or would become known, and that he would be punished. This official declaration might have unnerved the accused. It may have produced in him a mental and moral panic, and under its influence he may have confessed; but the sheriff did not hold out any hope of benefit to the defendant. This officer did nothing to excite in the accused fear of injury. On the contrary the sheriff assured him that he would be fully protected, and that no harm would befall him while in jail and in the custody of this officer.

A confession made to the sheriff will not be excluded simply because the prisoner was in his custody under arrest at the time. *Fuller* v. *State,* 109 *Ga.* 809, 812 (35 S. E. 298). The hope of benefit, which will exclude a confession, must be one which another holds out to the accused to elicit it. The fear of injury, which will render a confession inadmissible, must be a fear which another excites to make the defendant confess. *Bohannon* v. *State,* 92 *Ga.* 28 (18 S. E. 302) ; *Minton* v. *State,* 99 *Ga.* 254 (25 S. E. 626). In *Bohannon's* case, the witness threatened to prosecute him. He then confessed. In that case Chief Justice Bleckley said: " Was there any extortion in this? Surely not. There was no invitation to confess. . . No confession was suggested or mentioned; no reference was made to the subject, either expressly or

by implication. If any fear or hope calculated, or having any tendency, to prompt a confession arose in the mind of the accused, it was his own creation. . . Some inducement must be held out by another person, tending, according to human nature and the law of human motives, . . either to coerce through fear, or persuade through hope." In this case the sheriff did not invite a confession. One was not mentioned. The accused was warned that he could make a statement or not, just as he saw fit. The accusation of the sheriff that the accused was guilty was not pregnant with the hope of benefit or fear of injury. Its natural tendency was to repel, rather than elicit, a confession. Under the law of human motives, to accuse one of crime is to invoke denial. In *Miller* v. *State,* 94 *Ga.* 1 (21 S. E. 128), a fellow prisoner asked the accused, " What about the killing? " and said to the accused that he had " better tell the truth," and " the white folks were going to break somebody's neck." Whereupon the accused confessed. This court held that this confession was properly admitted. In *Minton's* case, the accused, while under arrest, voluntarily asked another, " Would it be better for me to tell the truth? " or " What had I better do? " and received the reply, " You had better tell the truth about it." This court held that under the above facts the confession should not have been excluded on the ground that it was improperly obtained. In *Willis* v. *State,* 93 *Ga.* 208 (19 S. E. 43), the defendant, who had killed another, surrendered himself to an arresting officer, who told the accused that giving himself up was the best course he could pursue. The defendant then made a confession to this officer; and this court held that what the officer told the accused did not render his confession inadmissible, it appearing that it was free and voluntary, and that the officer neither said nor did anything, other than above mentioned, before the confession was made. In *Fuller* v. *State,* supra, an officer caused a prisoner and his cell-mate to be brought into the office of the jail and presence of the sheriff. The officer said to the prisoner, " Tell the sheriff what you said to me last night." The sheriff then said, " Yes, let me hear what you have to say." The prisoner then made an incriminating admission. This court held that this admission was admissible under the above circumstances, the officer testifying that it was not induced by any hope of benefit or fear of injury.

The cases which come nearest sustaining the contention of counsel for the defendant are *Earp* v. *State,* 55 *Ga.* 136, and *Smith* v. *State,* 88 *Ga.* 627 (15 S. E. 675). In the first of these cases, the defendant was a girl only fourteen years of age. Her confessions were reluctantly made, and before she made them she said to the arresting constable, " If I tell you, won't you hurt me ? " to which this officer replied, "No, you shan't be hurt. I came here to arrest you, and you shan't be hurt." Here immunity from injury was distinctly promised, and the confessions were induced by this promise. In the case at bar, the defendant did not ask the sheriff if he would be hurt if he told this officer, and this officer did not tell the accused that he would not be hurt if he confessed. The statement of the sheriff to the defendant in this case was not made to elicit any confession from the defendant. In the *Earp* case the statement was made to induce the confession. In *Smith* v. *State,* supra, this court held that an admission made to a sheriff by a prisoner in jail, in response to the sheriff's admonition, in these terms: " You know you are the man; they got your cap, and you might as well own up," was of doubtful admissibility. That case is distinguishable from the one under consideration. In the *Smith* case the officer enjoined the defendant to own up. There was no such injunction in this case. In the *Smith* case there was no warning given the prisoner that he could make a statement or not, as he saw fit. In the case at bar such warning was given. So we are of the opinion that the court did not err in holding that a prima facie case was made for the admission of this confession, and in leaving to the jury to determine whether it was freely and voluntarily made and was not induced by the hope of benefit or fear of injury. Under these circumstances the rights of the prisoner in this respect were properly guarded.

3. Exception is taken to this instruction to the jury, to wit: " But I charge you in the beginning, that the law presumes everybody to be sane; that is a presumption, however, that is rebuttable, and it is not everybody that is sane, and the burden is on the defendant to establish that fact; whether or not that has been done either by evidence from the State, or established by evidence from the defendant, it can be done by evidence of either, is a question entirely for you to determine; you are the sole judges." The errors assigned are: (1) that it withdrew from the consideration

of the jury the fact that the defendant's, insanity could be established by the evidence offered both by the State and the accused; (2) that it is not a correct statement of the law, in that the court failed to charge " that the burden was on the defendant to show that at the time of the killing he was not of sound memory and discretion, but [not?] beyond a reasonable doubt, but [to] the reasonable satisfaction of the jury by a preponderance of the evidence;" (3) that it withdrew from the consideration of the jury the pertinent and controlling principle, namely, that the evidence bearing on insanity should be considered in connection with all the other evidence, in determining whether there was a reasonable doubt of the defendant's guilt. As to the first ground of alleged error, we do not see how an instruction that the insanity of the accused could be established by the evidence put in either by the State or by the defendant excluded from the consideration of the jury both in reaching a conclusion on this subject. The jury could hardly have been misled by this instruction into the belief that they could only consider the evidence for the State or the defendant, and not both, in passing upon the mental condition of the defendant. The second attack on this instruction is, not that it was per se an incorrect statement of the law, but that it was wrong to give it without giving another pertinent instruction. This is not a good exception. *Currie* v. *State,* 153 *Ga.* 178 (111 S. E. 727). In reference to the third assignment of error, we do not see how a given instruction can withdraw from the consideration of the jury another pertinent and controlling principle applicable to the case, even if we concede that there was such applicable, pertinent, and controlling principle.

4. The defendant asserts that the court erred in failing to give in charge to the jury the principle that the defense of insanity may be established from the indicia presented by the act itself, and the evidence of the mental condition of the accused before, at, and after the commission of the alleged criminal act. There was no request for this instruction. The court instructed the jury upon both general and delusional insanity as defenses. The methods of proving insanity were collateral matters on which the judge was not obliged to charge, in the absence of a timely written request. *Watts* v. *State,* 120 *Ga.* 496 (48 S. E. 142); *Watson* v. *State,* 136 *Ga.* 236 (6) (71 S. E. 122).

5. It is complained that the court erred in failing to charge that to relieve from criminal responsibility, on account of mental delusion, for the commission of an unlawful act, it is not necessary that the defendant be incapable of distinguishing right from wrong as to the particular act in question, and also incapable of choosing to do or not to do such act, and of governing his conduct in accordance therewith. There was no request for this instruction. In the absence thereof, and as this was a matter collateral to the defense of insanity, the court did not err in failing to give this instruction to the jury.

6. Error is assigned on the failure of the court to charge the jury that the evidence bearing on insanity should be considered in connection with all the other evidence, to determine whether there was reasonable doubt as to the defendant's guilt. There was no request for this charge. Conceding that this instruction, if given, would state a correct principle of law, which the writer doubts, it was likewise a collateral matter, and a timely request therefor should have been preferred. The court charged on the subject of reasonable doubt. If the defendant desired a more specific instruction on this subject, an appropriate request therefor should have been made. *Johnson* v. *State,* 148 *Ga.* 546 (3) (97 S. E. 515).

7. One ground of the defendant's motion for new trial is based upon the discovery of new evidence. This evidence was to the effect that the defendant's paternal grandfather was a semi-imbecile, that one of his mother's brothers was a total imbecile and lunatic, and had been committed for lunacy to the State sanitarium where he died, and that a sister of the defendant is of unsound mind and an idiot. The witness who testified to these new facts was a witness for defendant on his trial. In his affidavit he deposes, that he had had a conference with one of the defendant's attorneys prior to his trial, who questioned him in regard to the family history of the defendant and as to his mental condition; and that since the trial of said case, and after refreshing his recollection, he recalled that he knew the maternal ancestors of the defendant back to his great-great-grandparents. On the hearing of his motion for new trial the defendant introduced the record of the lunacy proceedings before the ordinary of Habersham County, in which his mother's brother was adjudged a lunatic and committed to the State insane asylum.

The defendant further moved for a new trial on the ground that since his conviction he had discovered that he could prove by one J. Vernon Grant that in October, 1919, he saw the wife of defendant, and had a conversation with her in which she declared to the witness that she loved Will Spencer better than she loved her husband, or ever would love him. Grants of new trials on the ground of newly discovered evidence are not favored. *Johnson* v. *State,* 128 *Ga.* 102 (57 S. E. 353). By their affidavits the defendant and his attorneys depose that they did not know of this newly discovered evidence, " and that the case [same?] could not have been discovered by the exercise of ordinary diligence." We construe this to mean that they did not know prior to the trial that they could prove these facts by the newly discovered witnesses; and that they could not have discovered, by the exercise of ordinary diligence, that they could make this proof by these witnesses. There is no allegation of lack of knowledge of the history of the mother's family in respect to imbecility or insanity of its members, and no reason is assigned why this knowledge could not have been acquired by proper inquiry among its members or acquaintances. The trial judge was authorized to find that this evidence could have been obtained by the exercise of ordinary diligence. For this reason the refusal of a new trial was proper. *Davis* v. *State,* 153 *Ga.* 154 (112 S. E. 280).

8. The verdict is supported by the evidence, and the trial judge did not abuse his discretion in overruling the motion for new trial. *Judgment affirmed. All the Justices concur.*