## Lacewell *v.* The State.

1. It was not error, in a trial for assault with intent to murder, to re-
fuse to give in charge to the jury a written request of the accused
which contained the following language: "Whenever a man ex-
ercises the right of self-defense and sets up such right in answer
to a charge of assault with intent to murder, he must be under-
stood by the jury to have acted on the facts as they at the time
appeared to him," although in other respects the request was un-
objectionable and one which ought to have been given.

2. Where, in the trial of a criminal case, a special request to charge,
based on the statement of the accused, was presented, but refused
because not couched in terms entirely legal and appropriate, it was
not improper for the presiding judge to shape his instructions to
the jury with reference to the sworn evidence in the case and the
law applicable thereto, it appearing from the charge as a whole
that the jury were fully informed as to the statutory provisions
concerning the statement, and that the accused was otherwise
given the benefit of what the statement contained, in case the jury
should take the same as true.

3. The newly discovered evidence in this case comes up to all the
legal requirements as to diligence, materiality and importance, and
is of such character as to entitle the accused to a new trial.

February 18, 1895.

Indictment for assault to murder.    Before Judge
Clark.    Fulton superior court.    September term, 1894.

W. I. Heyward and J. E. Robinson, for plaintiff in
error.    C. D. Hill, solicitor-general, by Harrison &
Peeples, *contra*.

Lumpkin, Justice.

Lacewell was convicted of an assault with intent to
murder, upon Barrett, by shooting him with a pistol.
The State, by several witnesses, made out a plain and
very strong case of guilt.    The accused introduced no
evidence, but made a statement which, if true, would

have authorized the jury to find that he acted under the fears of a reasonable man and shot in self-defense. The court was requested to charge the jury as. follows: "There need not have been actual danger to Lacewell, but if the circumstances were of such a character as to have justified a reasonably courageous man to believe that he stood in immediate peril of his life, or the infliction upon him of injuries amounting to a felony, and that acting under such fears and under such circumstances he shot Thos. A. Barrett, he could not be convicted of an assault with intent to murder, for such shooting would be justifiable under the law, although it would have appeared afterwards that such appearances of danger were false and that there was in fact neither the design to take away his life or to inflict such injury upon him, nor real danger that it would be done. Whenever a man exercises the right of self-defense and sets up such right in answer to a charge of assault with intent to murder, he must be understood by the jury to have acted on the facts as they at the time appeared to him; and if, without fault or carelessness on his part, he was honestly misled as to the character and purpose of the conduct, and defended himself rightly and justly according to the facts as they at that time reasonably appeared to him, then he would be justified, even though the facts were otherwise and there was in truth no real necessity for the shooting of Thos. A. Barrett."

1. The request was, in substance, about the same as the charge given in *McDuffie* v. *The State,* 90 *Ga.* 788–9, by our brother ATKINSON, who was at that time on the circuit bench. In alluding to the charge in that case, and having in mind the facts there presented, we remarked it was most favorable to the accused, but did not otherwise pass upon its merits. As a whole, and taken all together, it presents a fair view of the law of reasonable fears. It is not, however, absolutely free from criticism The

phrase, " Whenever a man exercises the right of self-defense and sets up such right in answer to a charge of assault with intent to murder, he must be understood by the jury to have acted on the facts as they at the time appeared to him," is capable of being misinterpreted, and, taken alone, might have misled the jury. Strict and close attention to the language immediately following this phrase might, perhaps, have prevented any misapprehension of the real meaning intended to be conveyed by the words quoted; but on the whole, we think it safer for the judge not to say to the jury in any criminal trial that the accused must be *understood* to have acted on the facts as they appeared to him. They might, in many cases, feel authorized to conclude from the evidence that he acted with no reference at all to the facts appearing at the time of the perpetration of the alleged offense, but from malice, or some other motive or reason. Notwithstanding, therefore, the ruling of this court in *Underwood* v. *The State*, 88 *Ga.* 47, following *Hayden* v. *The State*, 69 *Ga.* 732, to the effect that when a legal and pertinent request to charge, based upon the statement of the accused, has been made in writing, it should be given, we do not think that in the case at bar the judge committed any error in refusing to give in charge to the jury the request above quoted, in the precise language in which it was written; and therefore, his declining to charge this request would not be cause for a new trial.

2. The court, however, did not entirely ignore the request presented, but so far respected it as to charge the jury as follows upon the subject of reasonable fears: "Now you will observe, gentlemen of the jury, the defendant must have acted from a reasonable fear that a felony would be committed upon him, in order to justify him. Now then, you are to take all the evidence that is before you and see if he did act from a reasonable fear, and if he did act in shooting Barrett (if you

believe he shot him) in a spirit of self-defence; and in doing that you must look at the case as it presented itself to the defendant at the time he did the shooting; but it is with this qualification: you must believe that the circumstances were sufficient to produce upon his mind the conviction that Barrett would take his life if he didn't shoot him. While you are to look at the case from his standpoint, yet you must believe from the evidence that he was justified in taking such a view of it. The law holds him bound to it."

Error was assigned upon so much of the above quoted charge as is embraced in the last two sentences, and it was insisted here that the effect of the language excepted to was to restrict the jury to the evidence alone in passing upon the question whether Lacewell did or did not act under the influence of reasonable fears, and to exclude entirely from the jury all consideration, in this connection, of the statement made by the accused. It appears from the charge as a whole, that the jury were fully informed as to the statutory provisions concerning the statement, and that the accused was given the benefit of all the statement contained, in case the jury should accept the same as true. Indeed, it can hardly be doubted that if the jury had really believed Lacewell's statement, they would surely not have convicted him. Imputing to them ordinary common sense, it is not reasonable to suppose they would find the accused guilty of assault with intent to murder, if his statement satisfied them he shot in self-defense and for the purpose of preventing the infliction of a felony upon him. Be this as it may, the trial judge complied substantially with the rule announced by this court in *Vaughn* v. *State*, 88 *Ga.* 731, cited in *Miller* v. *State*, 94 *Ga.* 1.

Before dismissing this branch of the case, we deem it not improper to refer briefly to a portion of the above quoted extract from the charge of the court, to which

there was no exception. It will be seen that the judge, in effect, told the jury that in order to justify Lacewell's act in shooting Barrett, they must believe that the circumstances were sufficient to produce upon Lacewell's mind the *conviction* that Barrett would take his life if he did not shoot Barrett. We do not understand this to be the law. The word "conviction" is too strong. It is only necessary that the accused should have acted under the fears of a reasonable man. The great right of self-defense would be emasculated of most of its value, if, before one could exercise it, he must be convinced to a demonstration that he was in danger of being killed or having some other felony perpetrated upon him. This is obvious without elaboration. The doctrine of the court's charge would overturn the well settled rules upon this subject which have been announced by this court from the time of its organization. Inasmuch, however, as no error was alleged as to that portion of the charge which we have just discussed, we could not, and would not, have granted a new trial because of the instructions it contains. At the same time, we feel constrained to say we do not sanction the use of the language which we have pointed out as objectionable.

3. We grant a new trial in this case solely because of the newly discovered evidence. The alleged crime was committed on the 14th day of June, 1894, at one of the most public corners in the city of Atlanta. Immediately after the shooting, and without having opportunity to observe who were on the streets, the accused was arrested and placed in jail, and was tried on the third day of the ensuing July. Being in jail, he had no opportunity to search for or converse with witnesses, and his counsel both depose that they used all the diligence in their power and did all they could to find persons by whom they could prove the facts of the case, but were unable to accomplish anything in this direction before the

trial took place. After the accused was convicted, a number of persons voluntarily came forward and disclosed what they knew of the transaction. There are, in the record, the affidavits of no less than seven persons containing statements sustaining and closely corroborating the account of the difficulty given by the accused in his statement at the trial, which, as we have already observed, supported the theory of self-defense. The character of all these newly discovered witnesses is strongly vouched for in the affidavits of other persons filed with the motion for a new trial. We are unable to say that if the testimony of these witnesses had been introduced before the jury, the result would not have been different. Justice should be speedy, but it should also be sure.

We do not mean to intimate what the verdict at the next trial ought to be, but we leave the case open upon its merits to be determined by a fair and impartial jury, who, under our system, are regarded as the best judges of the credibility of witnesses, and are the supreme triors of all questions of fact.    *Judgment reversed.*