Caruthes *v.* The State.

A careful comparison of the testimony reported in the record of the first trial of this case with that which was introduced at the last trial discloses no material or substantial differences; and it having been adjudged when the case was last here for review that the offense amounted to no more than voluntary manslaughter, the second conviction for murder, like the first, is unwarranted by the evidence, and is contrary to law.

April 8, 1895.

Indictment for murder. Before Judge Smith. Pulaski superior court. February term, 1895.

Warren Grice, for plaintiff in error.

J. M. Terrell, attorney-general, and Tom Eason, solicitor-general, by Felder & Davis, *contra.*

Atkinson, Justice.

The defendant was indicted for murder, and has been twice convicted of that offense. From an order overruling his motion for a new trial on the former trial, a writ of error was taken to this court, and the judgment of the court below reversed. 95 *Ga.* 343. The defendant was again tried, the verdict resulting as before in one of conviction for murder. A motion for a new trial was again made, was overruled, and we are again called upon to review the questions made in this case.

The evidence shows, that this defendant was standing in a bar-room talking to the proprietor, having an open knife in his hand picking upon the counter; that the deceased entered and immediately engaged in a controversy with the defendant, by insisting that he had always been a warm friend of the defendant, saying that he had for the last two years kept the defendant out of the chain-gang. The defendant insisted, however, that the deceased had not, but on the contrary stated that the deceased and a certain other person had been trying to put him in the chain-gang. The deceased had a couple

of axe-handles in his hand, and as this discussion progressed, he stepped back, laid down one of the axe-handles and told the defendant, "Don't do that." Immediately they came together, the deceased striking the defendant with the axe-handle, and the defendant stabbing the deceased with the knife which he had in his hand. There is no evidence of pre-existing ill-will between these parties. The name of the deceased was Tom Caruthes. It appears from the evidence, that there was another Tom Caruthes living in the same neighborhood, with whom the defendant had had some trouble because of women, and that some months prior to this homicide the defendant was heard to say that Tom Caruthes bothered him every time he came to Hawkinsville, and if he did not quit it, there was going to be a killing scrape. The same witness, on cross-examination, stated that defendant said that Tom Caruthes had been picking at him, and that if he did not stop it there was going to be a killing scrape. Another witness testified that he heard defendant say that if Tom Caruthes did not quit bothering him he would kill him. Neither witness undertook to say that the threat had any application whatever to the deceased. Aside from this there was no suggestion of any previous ill-will. We do not think the evidence in this case presents any of the features of a malicious homicide. There is no evidence of any express malice worthy of consideration, and it cannot be said that the conduct of the defendant indicated either an abandoned or malignant heart. He was quietly standing where he had a perfect right to be, interfering with no person whomsoever, engaged in a friendly conversation with the proprietor of the place, when the deceased approached, and without provocation, and, so far as the evidence shows, without invitation to join in the conversation, immediately commenced an altercation with the defendant about some trivial matter concerning

which no rational man ought to dispute. There is some evidence in the record that the deceased had been drinking on that occasion, and we shall charitably presume that such was the fact. From a wordy altercation between these parties, they both suddenly became enraged, and each with weapons advanced upon the other, one armed with an axe-handle variously estimated to be two to two and a half feet long, and the other armed with a pocket-knife; and the result of the conflict was a homicide. The evidence, it is true, indicates some disparity between the sizes of the deceased and the defendant, but we do not think that this circumstance is sufficient to take the case out of the principle ruled in the case of *Gann* v. *The State*, 30 *Ga.* 67. No candid mind can question that this was a killing without premeditation, upon a sudden, violent impulse of passion, aroused, not by words alone, but by the commission upon the defendant of an assault by the deceased. The evidence shows that before the deceased was stabbed, he struck at the defendant with the axe-handle, and that the defendant with his arm warded off the blow and immediately stabbed the deceased with his knife. The proper classification of homicides is sometimes attended with difficulty, but if courts and juries will bear always in mind the legal distinctions existing between the different grades of homicide, and adjust the evidence so as to place each homicide in its appropriate classification, there should be little difficulty in determining how to grade it. Premeditation—malice aforethought—is one of the essentials of murder; it is indeed the distinguishing characteristic of that class of homicide; there can be no murder without and no lower grade of homicide with it. But a killing in response to the promptings of a sudden, violent impulse of passion aroused by an assault committed upon the person of another, without premeditation, is no more a murder than it is a larceny. It is

true a homicide is essential to its commission, but there
the parallel between the two offenses ceases. The same
radical difference exists between voluntary manslaughter
and justifiable homicide. The latter case involves the
idea of the prevention of a pending injury, accompa-
nied with manifest danger to one's person or property,
while as to the other, without reference to the necessity
of prevention, the law to some extent extenuates the de-
gree of a man's responsibility for the commission of the
homicide when the fatal blow is given under such cir-
cumstances as indicate that he struck in the heat of pas-
sion upon causes sufficient to produce that frame of
mind. In the offense of murder, however, neither the
idea of prevention nor of passion is involved. If upon
insufficient provocation, in the heat of passion engen-
dered thereby, one take the life of another, it is a case
of murder, because from such a killing the law will im-
ply malice. Upon a careful review of this testimony,
we can find no sufficient evidence to justify the convic-
tion of this defendant of the offense of murder. We
are fully persuaded that the verdict is the result of a
misunderstanding upon the part of the jury of the legal
effect of the testimony submitted. The obligation to
punish the guilty is one of the supreme duties of gov-
ernment, but the highest obligation of government to
organized society is the administration of the law in ac-
cordance with rules of conduct prescribed for the gov-
ernment of the citizens, and which guarantee in equal
measure the protection of the citizen and the safety of
the public. Perfection in the administration of the law,
if attainable at all, can only be attained when the emo-
tional is eliminated, and the rational alone employed in
the adjustment of the delicate relations existing be-
tween society at large and one of its members; and sub-
stituting in this case the one for the other, we think
right reason and a correct appreciation of legal princi-

ples classifies the case at bar as belonging to a grade of homicide other than murder.

Let the judgment of the court below be ¡*Reversed.*