*Richard B. Russell* and *Robert L. Russell,* for defendant.

---

## DAVIS *v.* THE STATE.

1. "Although several were jointly indicted, yet where one was put upon his trial separately, a verdict finding the defendant guilty meant the defendant on trial; and a motion in arrest of judgment, on the ground that the verdict was insufficient, was properly overruled."

2. The grounds of the motion for a new trial based on newly discovered evidence do not show cause for the grant of a new trial. The trial judge was authorized to find that the affidavits of the accused and his counsel showed that the facts could, by the exercise of reasonable diligence, have been obtained.

3. The instructions to the jury, complained of in the ground of the amended motion for a new trial numbered 3, do not, for any of the reasons assigned, show cause for the grant of a new trial.

4. In several grounds of the amended motion for a new trial, after quoting excerpts from the charge of the court, movant complains that the court did not charge other principles of law. It has been repeatedly ruled that this is not cause for the grant of a new trial. If other principles of law appropriate to the case had been desired by the accused, a proper written request therefor should have been presented to the court.

5. The evidence authorized the verdict, and the court did not err in refusing a new trial.

No. 2960. MARCH 18, 1922. REHEARING DENIED MAY 20, 1922.

Indictment for murder. Before Judge Meldrim. Chatham superior court. October 11, 1921.

The defendant was jointly indicted with another for the offense of murder. He was tried separately, and the jury returned a verdict of guilty. He filed a motion in arrest of judgment, asserting that the death penalty had been imposed upon him without any valid verdict upon which to base the same, because the verdict returned did not specify the particular " defendant " found guilty. This motion was overruled. He also filed a motion for new trial, which was, after amendment, overruled. Error is assigned upon the judgment of the court in overruling the motion in arrest of judgment and the motion for a new trial. In the first ground of the amended motion for a new trial, which is numbered 3, complaint is made that the court erred in charging the jury as follows: " Involuntary manslaughter shall consist in the killing of a human being without any intention to do so; and if in the commission of a lawful act which probably might produce such a consequence in an unlawful manner, the act shall be held and be deemed to be murder. Where there is an involuntary killing, if you find there was such in this case, and if you find it happened in the commission of an unlawful act,— and I charge you that pointing a pistol at another is an unlawful act, the law upon that subject being ' Any person who shall intentionally point or aim a gun or pistol, whether loaded or unloaded, at another, not in a sham battle by the military, and not in self-defense, or in defense of habitation,

property, or person, or other instances standing upon like footing of reason and justice, shall be guilty of a misdemeanor;— I therefore charge you that if you find that this defendant, under the law which I have just read to you, was guilty of the offense of pointing a pistol at another, if you find that that was an unlawful act and it was an unlawful act which in its consequences naturally tends to destroy the life of a human being, and the life of a human being was so taken, then I charge you that the offense shall be deemed and adjudged to be murder," for the reasons (*a*) there was no evidence to authorize the charge of pointing a pistol at another, nor was there anything in the defendant's statement to indicate that a pistol had ever been intentionally pointed at the deceased, and said charge was confusing and misleading; (*b*) the charge is argumentative; (*c*) it instructed the jury as to under what circumstances an involuntary killing could be murder, but nowhere instructed the jury under what circumstances it could or would be involuntary manslaughter in the commission of an unlawful act, and also the law of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. It is also complained that the court erred in failing to charge, in connection with the excerpt above quoted, (*a*) the law of involuntary manslaughter in the commission of an unlawful act; (*b*) the law of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. The other grounds of the motion for a new trial are based upon: (1) the failure of the court to give in charge other and additional principles of law claimed to be pertinent, it not appearing that proper written requests therefor were made; (2) the failure of the jury, in returning their verdict, to specify the particular defendant found guilty, and that for this reason the indictment does not contain any entry finding the movant guilty of any offense; (3) alleged newly discovered evidence.

*Robert L. Colding,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

GILBERT, J. 1. The defendant filed a motion in arrest of judgment, on the ground that he was jointly indicted with another for the offense of murder; that the State elected to sever; that on July 8th he plead not guilty to the indictment, and the jury returned

the following verdict: "We, the jury, find the defendant guilty;" that he was sentenced accordingly; and that the said verdict was not valid, because it did not specify which defendant they were finding guilty. The court properly overruled this motion. The failure of the jury to name the defendant in the verdict is also made a ground of the motion for a new trial. The precise question has been several times decided by this court. *Martin* v. *State*, 25 *Ga.* 494; *Thurmond* v. *State*, 55 *Ga.* 599; *Wilson* v. *State*, 66 *Ga.* 591; *Bernhard* v. *State*, 76 *Ga.* 613. The first headnote in this case is quoted from the first headnote in the last-cited case. In the opinion in that case it was said: "Bernhard being the only defendant on trial, a verdict of guilty meant him, and could not mean either of the others indicted with him, but not on trial. . . Therefore the motion to arrest the judgment was properly overruled." It is a familiar rule that verdicts are to be considered in connection with the pleadings, or, in a criminal case, in connection with the indictment and the plea of not guilty. Thus considered, there could not possibly be any doubt as to which defendant the verdict referred. Moreover, the bill of exceptions presented by plaintiff in error itself is sufficient to demonstrate the correctness of what has been said above, and to show that the verdict of guilty referred to the plaintiff in error in this case, and not to the person jointly indicted with him. The bill of exceptions contains the following: "Be it remembered, on May 23, 1921, the grand jurors selected, chosen, and sworn for the County of Chatham returned a true bill, charging one Benjamin W. Davis and B. F. Whitehurst with the offense of murder. That said case coming on for a hearing on the 8th day of July, 1921, the State elected to sever, and Benjamin W. Davis was placed on trial; said Benjamin W. Davis waived arraignment, plead not guilty, and thereupon a jury was duly empowered [empaneled] to try the issue formed upon said bill of indictment. That evidence was submitted and the court charged the jury, who retired and subsequently returned the following verdict: 'Savannah, Georgia, County of Chatham, July 8, 1921. We, the jury, find the defendant guilty. J. E. Hodge, Foreman.'"

2. The grounds of the motion for a new trial, based upon newly discovered evidence, are not sufficient to require the grant of a new trial. The accused, on the trial, did not plead insanity at

that time, nor that he was insane at the time of the commission of the offense. Upon the contrary it appears from the undisputed evidence, as well as by the statement of the accused, that at the time of the commission of the homicide and previous thereto the accused was conducting a real-estate business of some character. The homicide grew out of and resulted from previous negotiations for the sale of real estate between the accused and· the deceased. The alleged newly discovered evidence consists of affidavits: One from the superintendent of the Alabama Insane Asylum, stating that the defendant was, on March 22, 1920, .committed by the probate judge of Jefferson County to the asylum; that the diagnosis of his case showed " psychosis due to alcohol;" that he was " dismissed or furloughed or paroled on April 20, 1920, upon request of his brother." An affidavit made by Mary Long, nurse in the almshouse of Jefferson County, Alabama, upon whose testimony, in part, the accused was committed by the probate court to the Insane Asylum; and she deposes to the effect that from the 15th to the 22nd of March, 1920, the accused was confined in the almshouse, suffering from insanity, and, in her opinion, did not know the " rational difference between right and wrong." An affidavit from J. P. Stiles, judge of probate, who deposes that he committed the accused to the asylum on the testimony of Miss Mary Long, E. B. Sims, and Dr. W. J. Love, and that the accused was not present at the time of the commitment. An affidavit of C. W. Kicker, who deposed that the accused was confined in the city jail of Jefferson County on March 12, 1920, " in a demented condition, and that he did not know right from wrong at the time," and that on March 15, 1920, the accused was transferred to the county almshouse. A fair deduction from all of these affidavits leads to the conclusion that on March 12, 1920, the accused was arrested and confined in the county jail; that on the third day thereafter he was transferred to the almshouse and in the week following to the insane asylum, where his case was diagnosed, as stated by the superintendent, to be " psychosis due to alcohol." Webster's New·International Dictionary defines the word " psychosis " to be " a disease of the mind; esp., a functional mental disorder, that is, one unattended with structural changes in the brain." Therefore this patient was suffering from a mental disorder caused by alcoholic drink, unattended with structural

changes in the brain, and after less than thirty days he was " discharged, furloughed, or paroled." The only legitimate conclusion to be derived from a consideration of the disease and the release from the asylum or hospital is that the patient had recovered from the effects of alcoholic indulgence. It is readily seen that counsel for the accused, being informed that the latter had been in the Alabama Insane Asylum, could, without difficulty, have quickly obtained the name of the superintendent, the record as to the diagnosis, and from the records of that institution the name of the court holding the commitment trial, and the names of those on whose testimony the commitment was based; and these records would have shown all of the names and the facts constituting the alleged newly discovered evidence. The court was authorized to find that the affidavits of the accused and his counsel failed to show the exercise of that diligence required to complete the grounds based on newly discovered evidence. The affidavit of the accused states that he did not know from what court he was committed to the insane asylum, nor the names of the parties who now make affidavit in support of his motion for a new trial. The affidavit of his counsel states that he " was informed by his client that he had been in an insane asylum at Tuscaloosa, and he endeavored to obtain the necessary evidence, but was unable to do so before the last trial, and did not know where said B. W. Davis had been committed in the insane asylum, and therefore was unable to obtain the certified copy of the record hereto attached." Knowledge of the fact that the accused had been committed to the Alabama Insane Asylum at Tuscaloosa was sufficient to lead to the ready ascertainment of all the facts comprising the alleged newly discovered evidence.

3-5. The third, fourth, and fifth headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent because of sickness.*