## MORRIS v. THE STATE.

No. 9515.   JULY 13, 1933.

*A. B. Taylor* and *Willis Smith,* for plaintiff in error.

*M. J. Yeomans, attorney-general, William Y. Atkinson, solicitor-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general,* contra.

HILL, J.   Bernard alias Bonnie Morris, indicted for the murder of Rob Hix, was tried, convicted with a recommendation to mercy, and sentenced to life imprisonment in the penitentiary.   He made a motion for new trial, which was subsequently amended, and upon the overruling of this motion he excepted.

 The first ground of the amendment to the motion for new trial is based upon alleged newly discovered evidence.   The evidence relied on was given by J. P. Noles and Clifford Scott.   They made affidavits to the effect that they were traveling along the road near the point where the shooting occurred, that they saw a difficulty between the decedent and Holloway, and that at the time of the difficulty the defendant, Morris, was walking away, and took no part in the difficulty, and fired neither of the shots from the pistol or gun.   In connection with this ground the movant submitted affidavits as to the character of affiants.   The State submitted a coun-

ter-showing by affidavits from four witnesses, which contradicted the affidavits of Noles and Scott as to their presence on the road at the time of the shooting. In view of the counter-showing by the State, the judge did not abuse his discretion in overruling this ground. See *Hall* v. *State,* 141 *Ga.* 7 (3) (80 S. E. 307) ; *Ivey* v. *State,* 154 *Ga.* 63 (7) (113 S. E. 175) ; *Harris* v. *State,* 149 *Ga.* 724 (2) (102 S. E. 159).

■ Special grounds two, three, four, and five are based upon affidavits of three persons, R. C. Sheets, H. E. Sheets, and L. O. Johnson, to the effect that they were in the witness-room during the trial of the case, and heard a conversation between Grady Dennis and Rob Hix, the father of deceased; that they heard Rob Hix tell Dennis that his son, deceased, never did say anything; and that Dennis thereupon told Rob Hix to go back in the court-room and testify that the deceased did make a statement, before he died, "that he was going to die, and that Holloway and Morris shot him, and that they shot him for nothing. The affidavits of these men were contradicted by the affidavit of Dennis, to the effect that no such conversation took place. Moreover, the testimony of these men would be merely impeaching in character, and as such is not sufficient for the grant of a new trial. The judge did not abuse his discretion in refusing to grant a new trial on this ground.

■ The sixth ground assigns error on the following charge of the court to the jury: "The defendant, gentlemen, in this case says he is not guilty of murder, that he is guilty of no offense. He denies the charge contained in the indictment, and his plea of not guilty puts the burden on the State to prove all these allegations, as I have heretofore charged you. He says, while he was present at the time Rob Hix was shot and killed, that he did not participate in the shooting or the killing, but that the shooting was done by Jim Holloway, and that Jim Holloway shot and killed the deceased; and the defendant says he had nothing to do with it whatever, except he was simply there, and that he did not participate in it and had no part in the shooting and killing of Rob Hix." The seventh ground assigns error on the following charge, which immediately followed the charge set out above: "Gentlemen, if that is the truth about it, if you believe under the evidence in this case that is the truth about it, then the defendant, of course, could not be convicted of any offense." The complaint is that the court did not in connec-

tion therewith instruct the jury that they should consider the statement of the defendant, and that the charge as given eliminated the statement of the defendant from the consideration of the jury. The court, immediately before charging as set out above, charged fully with reference to the statement of the defendant, stating that the jury could believe it in part, or in whole, and in preference to the sworn testimony in the case. There is no criticism of the charge on the defendant's statement. These two grounds of the motion for new trial are without merit. *Cantrell* v. *State,* 141 *Ga.* 98 (80 S. E. 649); *Shelton* v. *State,* 150 *Ga.* 71 (102 S. E. 355); *Johnson* v. *State,* 150 *Ga.* 67 (102 S. E. 439); *Green* v. *State,* 150 *Ga.* 121 (102 S. E. 813); *Wilson* v. *State,* 150 *Ga.* 285 (103 S. E. 682); *Davis* v. *State,* 153 *Ga.* 154 (112 S. E. 280); *Currie* v. *State,* 153 *Ga.* 178 (111 S. E. 727).

■ The eighth and ninth grounds assign error on the charge of the court on the subject of dying declarations. Bob Hix, the father of the deceased, testified that about thirty minutes before the death of his son the latter made a statement to him, "that he was going to die, and that Morris and Holloway shot him, and that they shot him for nothing." The court charged the jury: "Gentlemen, in this case certain evidence has been admitted before you, claimed to be dying declarations upon the part of the deceased. I charge you, gentlemen, the law with reference to this is that dying declarations made by a person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide. So in this case, gentlemen, although I have admitted certain evidence to go before you, it is the duty of the jury to consider whether or not, under the evidence, the deceased, Rob Hix, as a matter of fact, made any declarations. If he made none, if you should believe that to be true, then the balance of this charge with reference to dying declarations, of course, you would disregard. But, gentlemen, if he made declarations, you can consider whether or not at the time they were made, as to whether or not the deceased, Rob Hix, was in the article of death, whether he was in a dying condition. Then inquire further whether or not he was conscious of that fact, whether or not he knew he was in a dying condition. If he made any statement, gentlemen, when he was in a dying condition, and yet he was not conscious he was in a dying condition, then, gentlemen, such

statements would not be dying declarations that the jury could consider; but if he made any statements and they were made when he was in a dying condition, then such statements should be considered by the jury as evidence in determining the cause of his death and the person who killed him, and in determining the issue as to whether or not the defendant is guilty or innocent." This excerpt is not open to the criticism that the court failed to instruct the jury that the evidence was only admitted upon prima facie proof of its verity, and that it is the province of the jury to determine whether the statement is in fact a dying declaration; and failed to instruct the jury in this connection that all dying declarations should be received "with great caution, and the bias, the feeling, and physical and mental condition of the declarant, as well as the credibility of the alleged declaration, should be considered and weighed," in determining whether or not the same amounted to a dying declaration. There was no request for further elaboration of the charge as given by the court, and it is not subject to the criticism made thereon. *Fitzpatrick* v. *State,* 149 *Ga.* 75 (99 S. E. 128).

The tenth ground asks a new trial because the court erred, during the trial, in receiving the verdict of guilty against the defendant in his absence, he being incarcerated in jail and his presence not being waived. When the jury reported that they had reached a verdict, this being early in the morning next after the day of the trial, they were brought into court-room. The judge asked if they had reached a verdict, and the foreman stated that they had. The judge then asked counsel for the defendant if they would waive the call of the jury, and they stated they would. The solicitor-general then received, read, and published the verdict. The judge then inquired whether or not the defendant was in court, and was advised that he was not. The judge then sent an officer to the jail for the defendant, and he was brought into the court within a few minutes. No other business was transacted, and the jury, which had remained in the jury-box, was asked the question if they had reached a verdict, and they stated that they had, and counsel for defendant waived the call of the jury, and the verdict was again read and published by the solicitor-general in the presence of the defendant. It is insisted by the plaintiff in error that his constitutional right to be present during the trial was violated. It will be

seen that the jury did not disperse after the first reading of the verdict in the absence of the defendant; and the court, discovering the absence of the defendant, sent for him, and when he was present in court the jury was asked if they had made a verdict, they stated they had; whereupon the verdict was read and published in the presence of the defendant after his counsel had waived the call of the jury. The defendant had the right, of which he did not avail himself, of polling the jury. He suffered no injury; he was present when the verdict was returned; the jury had been kept together; and the defendant has not been denied any constitutional or legal right. In *Nolan* v. *State*, 55 *Ga.* 521, 527 (21 Am. R. 284), it was said by Judge Bleckley: "The error of receiving a formal verdict in the prisoner's absence would be nothing, if the jury had been retained in the box and required to render a valid one in his presence. The mischief was done by discharging the jury without any legal necessity, and without obtaining from it something that the law could recognize as a verdict." In that case the jury had been dispersed after returning their verdict in the absence of the defendant. Here the jury was kept intact until the prisoner was brought into court and then the verdict was read and published. Moreover counsel for the defendant was present in court when the jury first came into the court-room and when the verdict was first read, and did not call the attention of the court to the absence of the defendant; and even if the defendant had been injured by the occurrence, in the light of the silence of the defendant's counsel he will be held to have waived any irregularity in the reception of the verdict. See *Swain* v. *State*, 162 *Ga.* 777 (6) (135 S. E. 187).

■ There was evidence to authorize the verdict. The judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*