1. In this conviction for murder, with life imprisonment, the general grounds of the motion for new trial, being neither argued nor insisted upon, will be treated as abandoned.
2. The court did not err in refusing a continuance because of the absence of an alleged material witness for the defendant in support of his statement to the jury that he shot the deceased in self-defense, since it appears that a subpoena for the witness was not delivered to the sheriff until the day of the trial, although the defendant had full time and opportunity to procure the presence of the witness, and failed to show that he acted with due diligence. Glover v. State, 89 Ga. 391
(15 S.E. 496); Kidd v. State, 101 Ga. 528
(28 S.E. 990); Ivey v. State, 154 Ga. 63 (113 S.E. 175); Blount v. Beall, 95 Ga. 182 (22 S.E. 52); Bone v. State, 8 Ga. App. 373 (69 S.E. 37); Edge v. State, 27 Ga. App. 264 (2) (108 S.E. 69), and cit. Especially can the defendant not complain of the failure to grant a continuance, where, before the case went to the jury, the court twice offered to send an officer for the witness, but such offer was not accepted. McRae v. State, 52 Ga. 290, 297; Brady
v. State, 120 Ga. 181 (2), 183 (47 S.E. 535); Curtis v. State, 48 Ga. App. 135 (2) (172 S.E. 99).
3. "Where a motion for new trial is based on the ground of newly discovered evidence, and there is a counter-showing, with conflicting evidence as to the truth of the alleged newly discovered facts, this court will not interefere with the grant or refusal of a new trial on that ground, unless there has manifestly been an abuse of the discretion which the law has vested in the trial judge, but not conferred on this court." Southwell v. State, 188 Ga. 310 (2) (4 S.E.2d 26), and cit.; Morris v. State, 177 Ga. 365, 367
(170 S.E. 217), and cit. Since the truth of the alleged newly discovered testimony as to the finding of a knife alleged to have belonged to the deceased, about two hours after the homicide at the place where she fell, was contradicted in the counter-showing by the State, and since statements in the affidavits of the two witnesses, corroborating the alleged newly discovered testimony of the main witness, are in conflict with their testimony given at the trial, no abuse of discretion appears in the refusal of a new trial on this ground.
Judgment affirmed. All the Justicesconcur.
 No. 13164. APRIL 11, 1940.
John Welch was indicted in 1933 for the murder with a pistol of Mattie Jefferson in that year, and remained a fugitive from justice until 1939, when he was tried and found guilty with a recommendation to mercy. The defendant relies on the two special grounds of his motion for new trial: The refusal to grant a continuance because of the absence of a material witness, and the discovery of new material testimony, as alleged. There is no *Page 162 
argument or insistence on the general grounds, independently of testimony which the defendant insists would have been developed from the witnesses referred to in the special grounds. In the trial he relied solely on his statement to the jury. In brief summary, the testimony for the State by eye-witnesses to the homicide was to the effect: that a number of negroes, including the deceased, had gathered at a small settlement, about dark while a moon was shining, after a fourth of July baseball game and barbecue; that the defendant came up to the deceased as she was getting ready to return home, and asked her to go to ride with him; that she told him she couldn't go, was going home to her children and husband; that he said, if she didn't go, she wouldn't go to her husband, and then backed off and fired several shots at her, one entering her left breast near the heart, and causing almost immediate death; that there appeared to have been no previous quarrel or dispute between them; that the deceased made no attack on the defendant, and did not say or do anything to provoke the shooting; that she was unarmed with pistol, knife, stick, or any kind of weapon; and that the firing was at close range within a few feet of the deceased. The defendant stated to the jury that the deceased had previously sent her daughter to tell him to come to her house and finish some whisky; that he did not go, and at the time of the shooting she asked him if he had gotten her message; that he told her, "Yes," and when she asked "Why didn't you come?" he replied, "Well, I was coming;" that she called him a liar with an epithet, and he said, "My mother was too good a woman for you to call me that;" and when she said, "You run after these other . . whores, and you can't come to me," she "cut me here on the back, and when I shoved her back, she hit me, and she struck me there, and when I fired I shot her [exhibiting to jury]. I would not have shot her, but I had to shoot her to keep her from killing me. I will show you where she cut me [showing jury]. The first lick was here, and the next lick here, and the next cut me here in the shoulder. I shoved her back and shot her. I was sorry, but I had to do something or get killed myself. She cut me on that shoulder right here; you will see it right along on that shoulder. I was sorry I did it. I had to save my own life. She said that was what she was going to do." One witness for the State testified that on the night of the homicide the defendant *Page 163 
showed him a cut place on his sleeve about his arm, and told him that the deceased had done it with a sharp knife; but the defendant did not show him any cut on his back and shoulder, and the witness saw no sign of any wound or blood.
In the ground relating to the refusal of a continuance it appears that, before the trial on Tuesday, August 29, the defendant had told his attorney in July that he desired to have the absent witness subpoenaed, and expected to prove by the witness that just before the shooting the deceased made an assault upon him with a knife; that counsel for the defendant talked to the witness in the office of counsel on the Saturday preceding the trial, and the witness promised to be present on Monday to testify, but no further inquiry was made until Tuesday, the day of trial, when a subpoena was issued, and it was discovered that the witness had not been present either Monday or Tuesday; and that the subpoena could not be served before the beginning of the trial, because the witness was about fifteen miles distant on a visit to a sick relative. In notations by the judge it appears that in overruling the motion for continuance he stated to the defendant and counsel that an officer would be furnished and time allowed to get the witness before the case went to the jury; that later the judge again offered to give time to send for the witness, and to furnish an officer to go for him by automobile, "if you desire for him to be here as a witness," but "no request was made by counsel to send after the witness."
In the ground relating to alleged newly discovered evidence, the defendant produced an affidavit by a witness, who had not testified at the trial, to the effect that about two hours after the body of the deceased had been removed from the place where she was shot, this witness, accompanied by her husband and her mother, went out to this spot, and "in looking over the place where [the deceased] had fallen . . and lain," the witness found "the pocket-knife of [the deceased] with the large blade open and blood on said blade, said large blade being approximately three inches long," and also "found on said spot, in addition to the knife, the handkerchief of [the deceased] and a one-dollar bill wrapped up in said handkerchief;" these statements as to ownership by the deceased being supported by the statement that "affiant asked the daughter . . of said [deceased], `Is this your Mama's knife and handkerchief?' and said daughter . . stated, `Yes, that *Page 164 
is Mama's knife, handkerchief, and dollar bill.'" In the trial, this daughter testified that she herself had a knife tied up in a handkerchief at the scene of the homicide, but that the deceased had no knife or weapon of any kind. In the counter-showing by the State the daughter swore that the statements in the affidavits for the defendant were false; that she had no conversation with those witnesses with regard to any knife, handkerchief, or dollar bill; and that she had heard the main witness tell another that such witness know nothing about the killing. It also appeared that the main witness, although not testifying at the trial, had been present in court; and that the two witnesses, who gave affidavits to corroborate the main witness, her husband and mother, had testified. The former at the trial swore: "I didn't see any weapon, knife, pistol, or stick where [the deceased] was lying." The mother also swore: "I didn't see [the deceased] after she was wounded. I didn't go out there at all." A deputy sheriff, in a counter-affidavit, stated that the mother had told the solicitor-general that she had not gone to the scene of the shooting at all. The State contended that the defendant had full opportunity to cross-examine both the husband and mother of the alleged newly discovered witness, and to develop all the facts; and that if the defendant had wished to show by any eye-witness that he shot in self-defense, he could have offered the testimony of his brother, who was present; but no such testimony was offered.