PARK *v.* THE STATE.

No. 16474.   February 16, 1949.

*Christopher & Futral* and *Williams & Freeman,* for plaintiff in error.

*Eugene Cook, Attorney-General, Frank B. Willingham* and *Benjamin B. Garland, Solicitors-General,* and *J. R. Parham, Assistant Attorney-General,* contra.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) ■ There can be no murder without the intent to kill.

The evidence in this case shows no specific intent to kill, and in the absence of showing such intent there could be no murder unless the evidence was sufficient to bring the case within one of the two provisions of our law wherein a person may be guilty of murder, with malice implied under the Code, § 26-1004, even though no specific intent to kill is shown.

An involuntary killing may be murder where the killing happened in the commission of an unlawful act which in its consequences naturally tends to destroy human life, as set forth in the Code, § 26-1009, defining involuntary manslaughter, but expressly providing that, if the killing occurs under the foregoing circumstances, it will be deemed and adjudged to be murder. *Leonard* v. *State,* 133 *Ga.* 435 (66 S. E. 251); *Gadsden* v. *State,* 134 *Ga.* 785 (68 S. E. 497); *Josey* v. *State,* 137 *Ga.* 769 (74 S. E. 282); *Ashford* v. *State,* 144 *Ga.* 832 (88 S. E. 205); *Davis* v. *State,* 153 *Ga.* 154 (112 S. E. 280). Under this provision of our law, the mere fact that the act causing the homicide was unlawful, standing alone, would not authorize a verdict of murder. It would be involuntary manslaughter in the commission of an unlawful act. For the unlawful act to increase the crime from involuntary manslaughter to murder, it must be not only unlawful, but an act which naturally tends to destroy human life. As applied to a homicide caused by driving a motor vehicle while under the influence of intoxicating liquors, whether such would be an act which naturally tends to destroy human life would depend upon additional concomitant circumstances to show the conduct to be such an act, and that the accused could reasonably apprehend that the act of so driving while intoxicated was, under all the circumstances, such an act as naturally tended to destroy human life.

The other instance where an involuntary killing could be murder is where the wilful and intentional conduct of the accused is such as to show a wanton and reckless state of mind, which would be the equivalent of a specific intent to kill. *Collier* v. *State,* 39 *Ga.* 31 (99 Am. D. 449); *Marshall* v. *State,* 59 *Ga.* 154; *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863); *Cook* v. *State,* 93 *Ga.* 200 (18 S. E. 823); *Smith* v. *State,* 124 *Ga.* 213 (52 S. E.

329); *Hamilton v. State,* 129 *Ga.* 747 (59 S. E. 803); *Josey v. State,* 197 *Ga.* 82 (28 S. E. 2d, 290); *Myrick v. State,* 199 *Ga.* 244 (34 S. E. 2d, 36). Under this provision of our law, the conduct showing a wanton and reckless state of mind need not necessarily be unlawful.

The two above-stated principles of law are basic and fundamental and are the only instances under which a person can be convicted of murder where the evidence does not show a specific intent to kill. It would serve no useful purpose to cite and discuss previous cases decided by this court wherein there has been an unintentional killing by the operator of a motor vehicle. Most, if not all of them, are cited or discussed in *Huntsinger v. State,* 200 *Ga.* 127 (1) (36 S. E. 2d, 92); *Smith v. State,* 200 *Ga.* 188 (36 S. E. 2d, 350), and *Jackson v. State,* 204 *Ga.* 47 (48 S. E. 2d, 864). Suffice it to say that the evidence in the instant case was sufficient to authorize the jury to find that the proximate cause of the homicide was the operation of the motor vehicle by the accused while under the influence of intoxicating liquors, and that a verdict of involuntary manslaughter in the commission of an unlawful act would have been authorized. But there were no other sufficient concomitant circumstances disclosed by the evidence which, when considered in connection with the fact that the accused was driving while intoxicated, would show it was such an act as naturally tended to destroy human life, and that such could be reasonably apprehended by the accused. Nor does the record disclose any wilful and intentional acts that show a wanton and reckless state of mind on the part of the accused such as would be the equivalent of a specific intent to kill. Patrolman Barrow, a witness for the State, who was standing near the patrol car waving a flashlight, testified that he saw the defendant some two or three hundred feet down the road before the accident, and he was approaching "at a very reasonable rate of speed and . . did not attract much attention. There was nothing bad about his driving at that time to attract my attention. He appeared at that time to be driving and operating his car in a perfectly normal manner. . . I didn't anticipate that anything was going to happen." It was undisputed that the pick-up truck which was struck from the rear had no tail light. The failure

of the accused to stop on account of the red blinker light or the waving of the flashlight, both of which were on the left side of the road to him, are the only facts which could be taken along with the fact of intoxication, that could tend to illustrate a wanton and reckless state of mind. We know of no duty requiring a person to stop under such circumstances. Even though it be midnight, one prudent person might stop, though another equally prudent might apprehend danger and decline to stop. Certainly the failure to stop under such conditions could not be evidence to authorize a jury to find such act to be the equivalent of a specific intent to kill. Neither could inattention or negligence supply such intent. Accordingly, the evidence was not sufficient to support the verdict and the trial judge erred in overruling the motion for new trial.

Inasmuch as this case is remanded for another trial, we also rule on some of the questions raised in the amended motion for new trial, not covered by the foregoing ruling, which might be raised in another trial.

■ The second and third grounds of the amended motion allege error in the admission of testimony. As evidence of lack of mental capacity, the accused introduced a psychiatric report from the Veterans Administration dated July 21, 1948, which report contained the statement: "He drinks periodically to promote sleep but denies doing this to excess."

(a) Over objection the State introduced the following testimony of B. B. Hayes: "I had an occasion to make a case against him [the accused] on or about the 27th day of December, 1947, for driving an automobile while under the influence of whisky." The mere fact that the witness made a case against the accused was of no probative value, was prejudicial, and should have been excluded.

(b) Over objection the State introduced an accusation from the City Court of Griffin charging the accused with driving an automobile while intoxicated, on March 30, 1946, with a plea of guilty. Inasmuch as the accused admitted upon the trial now under consideration that he drove the motor vehicle after having taken a drink, and the further fact that the plea of guilty in a previous case for driving intoxicated would not be

impeaching of his statement that he did not drink "to excess," which at most would be a matter of opinion and conclusion of the accused, this evidence was prejudicial and should have been excluded.

■ The fourth ground of the amended motion in substance alleges error in the failure of the court, upon request, to charge that, if the jury should find that the proximate cause of the homicide was the fact that the pick-up truck was parked on the highway, then they should acquit the accused. If the court properly charges what would constitute murder, involuntary manslaughter, and accidental homicide, such would necessarily cover the situation set forth in this requested charge.

■ The fifth ground of the amended motion is an objection to to a portion of the charge which, in effect, instructed the jury that, if the accused was under the influence of intoxicating liquors and such was the proximate cause of the homicide, this would authorize a conviction, without limiting said portion of the charge to a verdict of involuntary manslaughter. This was error for reasons set forth in the first division of this opinion.

*Judgment reversed. All the Justices concur, except Candler, J., who dissents.*