### 33131. PARK *v.* THE STATE.

DECIDED OCTOBER 26, 1950.

*Williams & Freeman, Harris, Henson, Spence & Gower, Alfred D. Fears,* for plaintiff in error.

*Benjamin B. Garland, Solicitor-General,* contra.

MacINTYRE, P. J. 1. The following hypothetical questions were propounded to Dr. Hicks, who had not observed the injury: "If a man 43 years of age and in good health has received some

blow on his head of such severity that a person can take the fingers and mash the skull from the front to the back, and before that time the skull was perfectly solid, and this man at the time he received this blow on his head was unconscious for thirty-six hours until he died and was in a state of shock, and had a very apparent brain damage which was due to a skull fracture and other injuries, and obviously had a pressure on his brain causing his eye to be out of focus and had other symptoms of pressure to the brain and he died within thirty-six hours and remained unconscious, would you state your professional opinion if the blow that was inflicted on the skull was sufficient to cause and did cause death?" The doctor answered, "Yes, I would state that injury that he had to his head caused his death."

An expert witness is permitted to state his opinion or conclusions from a hypothetical question based upon the testimony of other witnesses. *Morgan v. Bell,* 189 *Ga.* 432, 438 (5 S. E. 2d, 897); *Metropolitan Life Ins. Co. v. Saul,* 189 *Ga.* 1, 5 (5 S. E. 2d, 214); *Kimball v. State,* 63 *Ga. App.* 183 (2) (10 S. E. 2d, 240).

A witness, J. D. Pope, without objection, testified that the deceased was in good health at the time of the injury in question. This was sufficient to show the good health of the deceased as stated by the witness. *Metropolitan Life Ins. Co. v. Saul,* supra.

The testimony of J. L. Coleman, the brother of the deceased, was that he "saw the size of the wound in his [the deceased's] forehead; it was cut two or three inches long, and the whole top of his head was a mess, and it was just as soft as pulp over the top." He further testified that the nurse in the hospital showed him that "she could take her hand and mash it in" from front to back, and showed him "where the head was caved in." He further testified that his brother's skull was perfectly solid before the injury. This, of course, was sufficient to prove the fact stated in the hypothetical question that the blow received on the head of the deceased was of such severity that a person could take his fingers and mash the skull in from the front to the back, and that before that time the skull was perfectly solid.

The testimony of the witness Giles, the deceased's brother, and the deceased's wife, was sufficient to prove that the deceased was unconscious from the time that he received the blow until he died 36 hours later.

The witness Giles, who saw the deceased a few minutes after the injury, testified that the deceased had a broken arm and skull fracture, was unconscious and in a state of shock, had *a very apparent* brain damage and *obviously* had pressure on the brain causing his eye to be out of focus, and had other symptoms of pressure on his brain—for example, was unconscious. The fact that the witness happened to be a doctor did not convert these observed, obvious and easily discovered facts into mere opinions, and the incorporation of such facts into the hypothetical questions asked Dr. Hicks did not make the hypothetical question erroneous over the following objections: "(a). Because the question was violative of the rule against leading the witness on direct examination; (b) because there was no proven facts in the case to justify or form the basis of the hypothetical question propounded, nor to form any premise or basis upon which the opinion of the witness might be based, there being no evidence to show: (i) the extent of the skull fracture nor the location, size, character and severity of the wound produced thereby; (ii) to negative the contention that death was caused by some of the various and independent causes; (iii) to show that there was shock of any definable severity sufficient to justify the hypothetical question; (iv) that there was continuous unconsciousness; (v) the nature, character, extent, severity or location of the brain injury; (vi) that there was pressure on the brain of any defined degree sufficient to serve as a yardstick for the opinion; (c) because the opinion sought by the hypothetical question, and the opinion given in answer thereto, and here complained of, was and of necessity had to be based upon an opinion of non-expert witnesses and not upon proven facts." This question was in hypothetical form and based upon the testimony of other witnesses and was not erroneous for any of the reasons urged. We do not think the trial court committed reversible error in permitting the witness to answer the hypothetical question over the objections urged.

2. With the exception of the additional testimony concerned

with the extent of the deceased's injuries and the proximate cause of his death, which is discussed in the foregoing division of this opinion, the evidence in this case is essentially the same as that adduced upon the first trial of the defendant, and an account of the events leading up to and following the homicide may be found in *Park* v. *State*, 204 *Ga.* 766 (51 S. E. 2d, 832), and will not be repeated here. The evidence shows that the homicide occurred by the use of a motor vehicle driven by the defendant and authorized the jury to find that the defendant was driving under the influence of intoxicants, and that from all the facts and circumstances surrounding the homicide the defendant's intoxicated condition was the proximate cause of the deceased's death, and that but for the defendant's intoxicated condition the injuries would not have been inflicted. Hence the verdict of involuntary manslaughter in the commission of an unlawful act was authorized. *Trippe* v. *State*, 73 *Ga. App.* 322 (36 S. E. 2d, 121).

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*