## 22607. FERGUSON v. THE STATE.

QUILLIAN, Justice. Billy Ferguson, convicted of murdering Luke A. Brown with a certain pistol, filed an extraordinary motion for new trial alleging the discovery of material evidence subsequent to the trial. The evidence that was the basis of the motion was the testimony of one Harold M. Adams that between 8 and 8:30 on the morning of the homicide, some thirty minutes after the same was committed, he visited the

scene of the tragedy, the deceased's repair shop, and saw a pistol lying about a foot or two from and on the west side of the deceased's body. The witness did not identify the pistol further than to describe it as a revolver.

On the hearing of the motion the State made a counter showing. The testimony of Vincent Henderson, an undertaker, Edward Brown, a cousin of the deceased, and James Rainwater, a deputy sheriff, sworn on behalf of the State, was that they were at the scene of the homicide prior to and at the time the witness Adams was there; that they carefully looked around the body and even raised it up and looked under it in search of a pistol and that there was none close to the body or near the place where it was during the time they were present before the witness Adams arrived or at the time he testified he was present. There were other witnesses who testified they were present and did not see a pistol either before or at the time referred to in Adams' testimony.

The record of the trial that resulted in the movant's conviction was admitted in evidence. It contained a written confession of the movant: "At approximately 5:30 a.m. I got up from my bed in Mrs. McLarty's rooming house and went down to the Douglasville Gift Shop located on 78 highway east of Douglasville. This gift shop and radio and television repair shop was operated by a fellow named Brown. When I got to his place this morning I had to wait for him to get to the shop. I believe he arrived about 6:30 a.m. Brown was going to repair my radio in my car. He told me to take the radio out of my car and bring it in. He helped me take it out. Before we got the radio out, two boys came by and one of them I knew as Billy Jackson. I did not know the other one. They left in about five minutes. After they left, Brown helped me take the radio out of my car and took it inside the place. Brown repaired the radio and the two of us put it back in the car. While we were working on putting it in I went inside to get a screwdriver. While in there I saw Brown's gun, pistol, hanging on a nail in the corner of the workshop. I put the pistol in my pocket and went back to the car. We finished putting the radio in my car, then we both went into the shop. Brown walked over to the adding machine. He had his back to me. I took his pistol out of my pocket, aimed at him, I shot him in the back. When I shot him he fell on his back and mumbled something I

couldn't understand. Then I shot him twice more. Then I unzipped the pocket of his overalls and took his billfold out. I put the gun and billfold in my pocket and got in my car and drove back to my room at Mrs. McLarty's. I took several ten-dollar bills out of the billfold and put those in my pocket. I hid the gun and billfold and the rest of the money in the attic of the closet to my room. I then went to my girl's house, Helen Graham, and then we went to see about an apartment at Mrs. Thompson's on Rose Avenue. Then we went to Villa Rica to the hospital and had a blood test. On the way back to Douglasville we had gotten to White City and Deputy Sheriff Cooper and Chief Huckeba stopped us and brought me to jail in Douglasville. The gun that was shown me by T. A. Smith is the same gun that I shot Brown with and the same one that I hid in the attic at Mrs. McLarty's. The billfold is the same billfold that I took out of Brown's pocket when I shot him and the same one that I hid in the attic of my room in Mrs. McLarty's rooming house." The State also introduced a letter written by the defendant subsequent to his conviction. It was addressed to Mrs. Morris, formerly the wife of the deceased, and reads: "I am sorry I have not wrote you before now but now I would like to tell you I'm sorry for the grife and sorrow I've caused you. [I] could not say I know what you went through because I don't but God does. At the time I toke Mr. Browns life I was living for the devil what I did was a bad thing. I had liston the devil to long. I know that I cant do anythang for Mr. Brown now I wish I could I have bin saved for almost two years now so God has forgiven me now I'm asking you to. I am sorry I've waited so long. I have heard you got saved I'll glad for you. And I hope you happy. Life for me since God saved me has been full of blessing. And I believe God is going to deliver me and set me free. I hope it will not make you mad when he doese. I don't thank I desirve the blessing that God put on me but he still blessing me every day all I can do is prase him for the wonderfulley way he blesses me. I am sorry I cant come and see you so please except this litter. And may God bless you wonderfulley." The record also contained the testimony of Denver Gaston, an officer, who found the pistol and wallet, referred to in the movant's written confession, in the attic where the movant admitted having carried

them from the scene of the homicide immediately after it occurred.

There was, as contended by the movant, a material variance in the testimony of the deputy sheriff, Rainwater, given on the trial of the case when the movant was convicted and his evidence on the hearing of the extraordinary motion for new trial. On the trial of the murder case he swore that when he arrived at the deceased's shop, the scene of the homicide, on the morning it occurred, the door to the deceased's shop, where the body lay, was closed, but that he opened it and went in; that he was the only person present when he entered the shop. On the hearing of the extraordinary motion for new trial he testified: "Q. On the morning of the death of Luke Brown do you recall where you were when you received word of his death? A. Yes, I was at the jail. Q. And did you go to the TV repair shop? A. Yes, sir. Q. Who was there at the time you arrived? A. Raymond Head. Q. How did you get into the shop? A. Through the front door. Q. I will ask you whether or not it was open or closed? A. It was closed. Q. Was it locked or unlocked? A. I presume he had it locked, because I had to wait a second when I knocked on the door."

The trial judge overruled the extraordinary motion, to which ruling the movant excepted and brought the case here for review. *Held:*

1. "Where an extraordinary motion for new trial based upon newly discovered evidence is filed, and the State makes a counter-showing which contradicts the evidence upon which the motion is based, it is not an abuse of discretion for the trial judge to overrule the motion. *Morris v. State,* 177 Ga. 365 (170 SE 217), and cit." *McMullen v. State,* 200 Ga. 812 (38 SE2d 424). Here the evidence submitted upon the hearing of the motion made a direct issue of fact and the rule just quoted must be applied.

2. The insistence of the movant, plaintiff in error here, that because the witness Rainwater had made contradictory statements concerning material matters to which his testimony related, the evidence given by him could not support the judgment overruling the extraordinary motion for new trial, is without merit. In *Haywood v. State,* 114 Ga. 111 (1) (39 SE 948), this court in a full bench decision held: "The jury in

all cases must, in the process of arriving at the truth, determine what credit shall be given to each particular witness; and even though a witness is proved to have made statements directly contrary to his evidence, that evidence affords a sufficient basis for a verdict, if the jury believe it to be true." A similar holding is found in *Davis v. State*, 94 Ga. 399 (19 SE 243). However, in the present case if the rule had been otherwise it must be noted that the movant's only witness Adams was contradicted by other State's witnesses who were not impeached or discredited in any manner.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 15, 1964—DECIDED OCTOBER 19, 1964—REHEARING DENIED NOVEMBER 5, 1964.

*A. Hugh Leatherwood, Sr.*, for plaintiff in error.

*Dan Winn, Solicitor General, John T. Perren, Assistant Solicitor General, Robert J. Noland, Eugene Cook, Attorney General, Ruby G. Jackson, Assistant Attorney General*, contra.